UNITED STATES of America ex rel.
Gilbert RIVERA, Petitioner,

v.

Gayle FRANZEN, Director, Department
of Corrections, State of Illinois, et
al., Respondents.

No. 80 C 5139.

United States District Court,
N.D. Illinois, E.D.

July 26, 1984.

See also 564 F.Supp. 723.

Susan Bandes, American Civil Liberties Union, Chicago, Ill., for petitioner.

Terence M. Madsen, Asst. Atty. Gen., Chicago, Ill., Lionel Livingston, Evanston, Ill., for respondents.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

In this action, filed pursuant to 28 U.S.C. § 2254, petitioner Gilbert Rivera ("Rivera") challenges his 1974 murder conviction. Rivera bases his challenge upon his trial counsel's failure to investigate a potential insanity defense and present this defense at trial and the subsequent sentencing hearing. On May 25, 1984, this Court held an evidentiary hearing on the issue of whether Rivera's trial counsel had notice of his prior psychiatric history, yet failed to investigate a potential insanity defense. The following findings are based on the testimony of petitioner's father, Fabriciano Rivera, his trial counsel, Lionel Livingston, and a partner in the firm with which Livingston was associated, Howard Pomper, as well as petitioner's deposition testimony, the parties' stipulation of facts, exhibit B appended to the respondents' motion to dismiss and those exhibits introduced at the hearing.

### FINDINGS OF FACT

(1) Lionel Livingston represented petitioner at trial in 1973. Since his admission to the Illinois bar in 1936, Livingston had handled hundreds of criminal cases, including several murder cases and several cases in which insanity defenses were raised. From 1965 until he retired in 1978, Livingston's practice consisted almost exclusively of criminal defense work.

(2) From 1970 through 1978, Livingston associated himself with the firm of Miller and Pomper, handling on a salaried basis all of that firm's criminal felony cases. In addition, Livingston also handled additional criminal defense work not referred to him by Miller and Pomper.

(3) The procedure under which Livingston received felony cases from Miller and Pomper was as follows. A client would come to the firm's offices, where an attorney would conduct the initial interview. The interviewing attorney would prepare an "intake sheet" consisting of notes taken during the initial interview. That "intake sheet," together with any other relevant material supplied by the client, would be placed in a case file and delivered to Livingston. Livingston then would interview the client and prepare the defense. Pomper would follow up as to the status of each case, passing on to Livingston any further information he acquired during the course of the case.

(4) Petitioner's father, Fabriciano Rivera, came to the offices of Miller and Pomper on June 25, 1973. He told Pomper that: (i) his son, the petitioner, was incarcerated at the Cook County Jail, having been charged with murder; (ii) the alleged murder occurred during a fight at Rosy's Tap; (iii) petitioner had been represented at seven prior court dates by the public defender's office; and (iv) the next court date was set for July 31, 1973.

(5) Although he primarily speaks Spanish, Fabriciano Rivera also speaks some English, and was able to relate the foregoing description of his son's case to Howard Pomper. However, he did not relate to Howard Pomper any of the details of his son's prior history of psychiatric problems. Fabriciano Rivera then signed the retainer agreement prepared by Pomper (Respondent's Exhibit 2), and left the firm's offices. Although Spanish-speaking interpreters were available in the firm's offices, and he

did not speak Spanish, Howard Pomper did not request their assistance.

(6) Livingston picked up the Rivera case file within a few days after the initial interview. Although they were "typically sketchy," he had no occasion to doubt that Pomper's notes (Respondents' Exhibit 1) were other than a complete record of Pomper's interview of Fabriciano Rivera. Livingston interviewed petitioner at the "attorney's window" in the Cook County Jail shortly after receiving the case file. He also obtained documents from the public defender who previously handled the case.

(7) At the outset of this first interview with Livingston, petitioner handed a three-page, handwritten description of his case to Livingston (Respondents' Exhibit B). Livingston read this statement, then began a "complete interview" of the petitioner. They discussed the petitioner's version of the occurrence, including his consumption of alcohol that evening. The petitioner did not refer to his use of Thorazine and conveyed to Livingston the impression that he had not been drinking heavily.

(8) At no time during the conduct of petitioner's defense was Livingston aware of petitioner's prior psychiatric history. Petitioner's psychiatric history included the following events, which occurred between the time he killed his uncle in self-defense, sometime in 1967, and the date of the murder for which he was charged:

a. Several suicide attempts;

b. treatment on three occasions at St. Mary of Nazareth Mental Health Center and on one occasion at Illinois Mental Health's Read Zone Center;

c. a current prescription for Thorazine.

(9) On the day of the homicide, the petitioner had consumed approximately fifteen mixed drinks, containing approximately one pint of vodka, as well as "a couple of quarts" of beer. The petitioner also had taken Thorazine that day.

(10) Livingston never inquired of the petitioner, at either this initial or at subsequent meetings, as to whether Rivera had a history of psychiatric problems, although

he ordinarily inquired into psychological histories "where indicated," *i.e.*, if the case file indicated or someone brought to his attention some psychiatric treatment his client previously had received.

(11) The petitioner never volunteered any information as to his past psychological history. During the first interview and at all subsequent meetings, petitioner appeared to Livingston to be controlled and lucid, giving Livingston no indication other than that he was and had always been free from psychological problems.

(12) Livingston visited the petitioner again at the Cook County Jail and spoke with him subsequently at each of his eight pretrial court appearances. Livingston also reviewed witnesses' statements and police and medical reports.

(13) Livingston never contacted petitioner's family to discuss the case. However, Livingston normally would speak with members of a client's family when they attempted to contact him. No one from Rivera's family ever contacted Livingston or was present at petitioner's court appearances, including his trial and sentencing.

(14) In connection with petitioner's presentence investigation report ("PSI"), petitioner informed the probation officer that he had "no mental problems." Livingston read this portion of the PSI at the sentencing hearing.

(15) In conducting petitioner's defense, Livingston relied upon a theory of self-defense. No insanity defense was raised at trial.

## DISCUSSION

### A. Ineffective Assistance of Counsel

In ordering an evidentiary hearing on "the issue of Livingston's knowledge," Judge Getzendanner indicated that petitioner's ineffective assistance claim "depended directly on whether he [Livingston] knew or should have known of Rivera's depression and suicidal tendencies." *United States ex rel. Gilbert Rivera v. Franzen,* 80 C 5139, Slip. op. at 14, (N.D.Ill. May 27, 1981). Rivera's petition for *habeas corpus*

was originally based upon the allegation that his father had told Livingston of Rivera's prior history of psychiatric hospitalization. Had the evidence presented at the hearing supported this allegation, Rivera's ineffective assistance of counsel would be established. *See, e.g., Mauldin v. Wainwright,* 723 F.2d 799 (11th Cir.1984); *Martin v. Maggio,* 711 F.2d 1273 (5th Cir.1983); *Moreno v. Estelle,* 717 F.2d 171 (5th Cir. 1983); *Martin v. Rose,* 717 F.2d 295 (6th Cir.1983) (inadequate investigation of potential alibi defense). But the evidence establishes that Livingston was never aware of petitioner's psychiatric history. Fabriciano Rivera spoke only with Pomper, never with Livingston. In his conversations with Pomper, Fabriciano Rivera did not convey to Pomper his son's prior psychiatric history.

Therefore, the petitioner's claim rests solely upon Livingston's failure to discover the facts supporting a potential insanity defense. His claim founders, unless Livingston's failure to discover these facts reduces his representation below "a minimum standard of professional representation." *United States v. Zylstra,* 713 F.2d 1332, 1338 (7th Cir.1983), quoting *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (7th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). *See also United States ex rel. Cosey v. Wolff,* 682 F.2d 691, 694 (7th Cir. 1982).

The Supreme Court has recently clarified the minimal standard of competence required of criminal defense counsel. *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic,* — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Strick-*

*land,* the Supreme Court approved the "reasonably competent attorney" standard that has been in effect in this Circuit for some time. Compare *Strickland,* — U.S. at —, 104 S.Ct. at 2063, with *Zylstra,* 713 F.2d at 1338.

*Strickland* is also of interest because one of the claims raised there was the same type of ineffective representation alleged by Rivera,[1] a failure to investigate a potential "defense" of mental defect. In denying that claim, the Court outlined trial counsel's duty to investigate as follows:

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, *counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.* In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. *And when a defend-*

---

**1.** While claims of ineffective assistance of counsel often contain a component addressed to counsel's failure to investigate a potential defense, the failure to investigate is often only one aspect of a total lack of effort by counsel. For example, in *Martin v. Rose, supra,* counsel not only failed to investigate an alibi defense after the defendant identified potential alibi witnesses, but also failed to adequately consult with his client, failed to undertake any pretrial discovery, failed to examine the file of his client's

prior counsel (the public defender), failed to make any effort to obtain a favorable plea bargain and ultimately presented only a cursory defense at trial.

In marked contrast, Livingston fully prepared and effectively presented a defense on a theory of self-defense. He reviewed witnesses' statements and police and medical reports. Livingston's failure to discover a potential insanity defense is thus the only deficiency alleged, rather than one of a series of failures.

*ant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions,* just as it may be critical to a proper assessment of counsel's other litigation decisions. (emphasis added, citation omitted)

at ——, 104 S.Ct. at 2066.

Livingston did not make any investigation of a potential insanity defense, aside from his conversations with Rivera. Thus, the standard enunciated in *Strickland* mandates two separate inquiries in this case. First, did Livingston's conversations with Rivera amount to a "reasonable investigation" into a potential insanity defense. If not, then was Livingston's decision not to further investigate this potential defense a reasonable decision in light of all the circumstances, including Livingston's conversations with Rivera.

The facts of this case give the initial impression that Livingston's investigation of the potential defenses of insanity and diminished capacity was not only unreasonable, but nonexistent. Livingston never inquired of the petitioner as to whether he had been admitted to a mental hospital or been treated for a mental disease. Nor did Livingston ask the petitioner if he was using any type of drug either by prescription or recreationally, on the night of the murder for which he was charged. Livingston never sought out petitioner's family or attempted to pursue a line of questioning that would shed light upon the petitioner's mental state on the night of the murder for which he was charged.

■ A more careful examination of these facts reveals that Livingston did conduct some form of investigation into this line of defense. Livingston spoke with the petitioner on at least ten separate occasions. While some of these encounters were relatively brief, the initial interview allowed Livingston to observe Rivera for a more extended period. Being an attorney with considerable experience in criminal matters and, therefore, in dealing with a wide range of people, Livingston may be presumed to have some ability to evaluate the mental capacity of his client. *See United States ex rel. Mireles v. Greer,* 736 F.2d 1160 at 1165–1166 (7th Cir.1984) (counsel, perhaps more than any other party, is in a position to evaluate the accused's competence to stand trial). In his pretrial meetings with the petitioner, Livingston was gathering information relevant to Rivera's mental state and forming impressions that Rivera appeared controlled and lucid. *See Mitchell v. Hopper,* 564 F.Supp. 780, 785 (S.D.Ga.1983). In this sense, Livingston "investigated" the possibility of an insanity defense. *See Strickland,* —— U.S. at ——, 104 S.Ct. at 2069 (trial counsel could reasonably evaluate the usefulness of psychological evidence based on conversations with the accused).

■ Nonetheless, this level of investigation does not constitute "reasonable investigation" of the defenses of diminished capacity and insanity. *United States ex rel. Lee v. Rowe,* 446 F.Supp. 1039, 1048 (N.D. Ill.1978). Such a reasonable investigation would certainly include an examination of Rivera's hospital records of psychiatric treatment, an inquiry into the circumstances of his suicide attempts, some review of the nature and effects of his usage of Thorazine and, perhaps, a psychiatric examination. For example, in *Beavers v. Balkcom,* 636 F.2d 114 (5th Cir.1981), the Fifth Circuit found that despite counsel's belief that the petitioner was actually sane, his failure to examine the records of petitioner's psychiatric hospitalization and to obtain a psychiatric examination, rendered the pretrial investigation inadequate. Following *Beavers,* the Eleventh Circuit found trial counsel's failure *to discover* petitioner's previous hospitalizations for alcoholism amounted to failure "to conduct a legally sufficient investigation which would allow him to make such a strategy decision [not to request a psychiatric examination]."

*Mauldin*, 723 F.2d at 800. Since Livingston's investigation did not constitute a "reasonable investigation, the Court turns to the question of whether Livingston made a reasonable decision not to pursue further investigation into the defenses of insanity or diminished capacity.

 Livingston may have concluded that Rivera was sane based upon their conversations. Nonetheless, the Court is left with the impression that Livingston never consciously chose to abandon these defenses. Based upon the testimony of those involved, it appears that Livingston allowed Rivera to set the agenda for their initial meeting and never considered any defense other than that suggested by Rivera. Counsel cannot permissibly delegate such strategic choices to the client. *See Martin v. Maggio*, 711 F.2d at 1280 (murder defendant's instruction to counsel to either "walk me or fry me" did not excuse counsels' failure to investigate an intoxication defense). Trial counsel has a duty to make an *independent* investigation and prepare the defense. *Bell v. Watkins*, 692 F.2d 999, 1009 (5th Cir.1982), *cert. denied, sub nom. Bell v. Thigpen*, —— U.S. ——, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983). By delegating to Rivera the decision as to which defense would be investigated and pursued, Livingston defaulted on his duty to make an independent investigation and a reasonable decision to abandon or pursue further the potential defenses of insanity and diminished capacity.

Even if it could be said that Livingston made a deliberate decision to abandon these defenses, that decision would have been unreasonable because of Livingston's almost total lack of relevant information. *United States ex rel. Cosey v. Wolff*, 562 F.Supp. 140, 144 (N.D.Ill.1983), *aff'd* 727 F.2d 656 (7th Cir.1984). By failing to inquire as to whether Rivera had a history of psychiatric problems or recent drug usage, Livingston "rejected the defense without pursuing the basic inquiries necessary to evaluate its merits intelligently." *Martin v. Maggio*, 711 F.2d at 1280. Livingston's only information, his impression that Riv-

era as lucid and controlled *during their interviews*, did not adequately relate to Rivera's mental condition *on the night of the homicide*, roughly seven or eight months prior. *See also Mauldin*, 723 F.2d at 800. In a case where Rivera's lack of intent was one of two defenses available (the other being the justification of self-defense) Livingston's out of hand rejection of that line of defense was unreasonable.

In closing argument, respondents likened counsel's duty to investigate to that of the Court's, arguing that since nothing was brought to Livingston's attention which would alert him of the possibility of an insanity defense, his failure to investigate was reasonable. The Court rejects this argument for two reasons. First, in our adversary system the role of defense counsel in assuring adequate investigation should be decidedly more active than that of the Court. Second, even if standards governing the Court's duty to inquire were a model for defense counsel's duty, that standard would mandate a more active rule than that assumed by Livingston. In determining competence to plead, this Court inquires *as a matter of course*, into whether the defendant has a prior history of hospitalization for psychiatric problems and as to any recent drug usage. Without such an inquiry, a finding of competence to plead would be based on insufficient facts. Counsel should do no less.

In a recent decision, the Seventh Circuit reemphasized the district courts' responsibility for engaging a defendant "in a meaningful dialogue" before accepting a guilty plea. *United States v. Frye*, 738 F.2d 196, pp. 200, 201 (7th Cir., 1984). *Frye* also teaches that counsel and the court cannot assume that without explanation a layperson will comprehend the legal significance of even a relatively straightforward set of facts. Pp. 199–200. Livingston's reliance upon his client to bring to his attention facts indicating an insanity defense was unreasonable precisely because Rivera could not be expected to know that his psychiatric history afforded him one of the only two potential defenses available.

■ The totality of the circumstances of Rivera's case indicate that *a preliminary inquiry* into all available theories of defense was required. The charges against Rivera were serious and the number of potential defenses was limited. Since Rivera had been identified, and indeed admitted his involvement, the only available defenses were justification or lack of intent. Therefore, Livingston's failure to inquire even preliminarily into one of these lines of defense rendered his assistance to Rivera ineffective. In order for counsel to render effective assistance, the client cannot take on the role of defense attorney and counsel cannot attempt to adopt the role of psychiatrist.

### B. Prejudice

■ It is not enough that Rivera has demonstrated that his counsel's performance was deficient. To obtain the *habeas* relief he seeks, Rivera "must also show that the deficient performance prejudiced the defense." *Strickland,* —— U.S. at ——, 104 S.Ct. at 2064. This second requirement exists in light of the fact that "the right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic,* —— U.S. at ——, 104 S.Ct. at 2046. Accordingly, Rivera bears the burden of showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* —— U.S. at ——, 104 S.Ct. at 2068. However, in certain contexts, prejudice is presumed from the nature of deficiency. *See Cronic,* —— U.S. at ——, 104 S.Ct. at 2045–49.

The deficiency in counsel's performance Rivera has demonstrated was counsel's failure to ask even preliminary questions which might have elicited a description of Rivera's psychiatric history, his suicide attempts or use of Thorazine. In an opinion issued on May 27, 1983, this Court ruled that in cases of ineffective assistance by virtue of a failure to investigate, as opposed to a "trial blunder," a petitioner need not show lack of harmless error. *United States ex rel. Rivera v. Franzen,* 564 F.Supp. 723, 727–29 (N.D.Ill.1983). Rather, the Court found that the requisite showing of prejudice consisted only of demonstrating that a colorable defense existed, *i.e.,* that the defense was impaired. At that point, the government would be required to show that counsel's ineffectiveness did not affect the verdict. *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 456 (7th Cir.1984); *United States ex rel. Cosey v. Wolff,* 727 F.2d 656, 658 (7th Cir.1984). However, the intervening decision in *Strickland* necessitates a reconsideration of this Court's prior rulings on the issue of prejudice.

Although prior decisions on the issue of prejudice may have been superceded, to some extent, by *Strickland,* several federal courts have examined the showing of prejudice required of a petitioner asserting ineffective assistance claims similar to that advanced by Rivera. *See, e.g., Dufresne v. Moran,* 729 F.2d 18, 25 (1st Cir.1984); *Tucker v. Zant,* 724 F.2d 882, 893–94 (11th Cir.1984); *Mauldin v. Wainwright,* 723 F.2d 799, 801 (11th Cir.1984); *United States v. Tucker,* 716 F.2d 576, 588–94 (9th Cir.1983); *United States ex rel. Sullivan v. Fairman,* 564 F.Supp. 575, 580–81 (N.D. Ill.1983), *rev'd* 731 F.2d 450 (7th Cir.1984); *United States ex rel. Cosey v. Wolff,* 562 F.Supp. 140, 146–48 (N.D.Ill.1983), *aff'd* 727 F.2d 656 (7th Cir.1984). The *Strickland* decision itself also offers some specific guidance as to the proper standard for prejudice by citing the test for materiality for information or evidence made unavailable to the defendant through government action. —— U.S. at ——, 104 S.Ct. at 2067, citing *United States v. Agurs,* 427 U.S. 97, 104, 112–13, 96 S.Ct. 2392, 2397, 2401–02, 49 L.Ed.2d 342 (1976) and *United States v. Valenzuela-Bernal,* 458 U.S. 858, 859, 872–74, 102 S.Ct. 3440, 3442, 3449–50, 73 L.Ed.2d 1193 (1982). *See also Cramer v. Fahner,* 683 F.2d 1376, 1382–83 (7th Cir. 1982), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1983).

The parties, previously have not had the opportunity to brief the issues of prejudice

that becomes relevant by virtue of the finding of ineffective assistance. Accordingly, they will be given additional time to file such briefs, as well as any evidentiary material they deem relevant to the issue of prejudice. Such evidence may include affidavits of experts as to the effects of Thorazine when used with alcohol or as to the petitioner's mental state on the evening of the homicide.

## CONCLUSIONS OF LAW

(1) Livingston had a duty to make some independent investigation into each of the limited number of potential defenses to the serious charges against his client Gilbert Rivera.

(2) Livingston's investigation into the defenses of insanity and diminished capacity was unreasonable.

(3) Livingston's decision not to further investigate these defenses was unreasonable because he did not possess sufficient information on which to base his decision.

(4) By virtue of Livingston's failure to make preliminary inquiry into these lines of defense, Rivera did not receive effective assistance of counsel.

IT IS THEREFORE ORDERED that the parties are directed to file on or before August 31, 1984: (i) memoranda on the issue of prejudice; (ii) either the records of petitioner's psychiatric hospitalization or abstract of those records; and (iii) any other evidence relevant to the issue of prejudice, as described above.