484 So.2d 491 (1985)
David DILL, Jr.
v.
STATE.
6 Div. 396.
Court of Criminal Appeals of Alabama.
July 2, 1985.
On Return to Remand November 12, 1985.
Rehearing Denied January 7, 1986.
Certiorari Denied February 28, 1986.
*493 Harwell G. Davis III and James Scott Boudreaux, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen. and J. Anthony McLain and James F. Hampton, Sp. Asst. Attys. Gen., for appellee.
Alabama Supreme Court 85-460.
BOWEN, Presiding Judge.
David Dill, Jr. was indicted and convicted for the murder of Alfred Glenn Armstrong in violation of Ala. Code 1975, § 13A-6-2. Sentence was life imprisonment. Three issues are raised on appeal.
Appellate counsel argues that the defendant was denied his constitutional right to the effective assistance of counsel because appointed trial counsel (1) failed to investigate and raise the issue of the defendant's competence to stand trial or his sanity at the time of the crime and failed to present an insanity defense, (2) failed to challenge the voluntariness of the defendant's two statements to the police, and (3) failed to question the State's only eyewitness about a prior inconsistent statement and about the possibility that she was threatened by the police into incriminating the defendant in her second statement. Issues (2) and (3) are related to issue (1) in that, if defense counsel acted reasonably in failing to raise the issues involving the defendant's mental capacity, his actions with regard to the second and third issues are justified as professional assessments of trial strategy.
In the early Saturday morning hours of October 3, 1982, the defendant and Armstrong were drinking and talking at the defendant's apartment in North Birmingham. Nancy Pace, the State's star witness, was living with the defendant. She testified that the two men began to argue and fuss and that the defendant hit Armstrong in the head with a glass beer pitcher. After the defendant unsuccessfully attempted to revive Armstrong, he placed the body in the bathtub, where it remained until the morning of October 5th. Then the defendant placed the body in the trunk of Armstrong's car and, accompanied by Miss Pace, drove to Collinsville in DeKalb County, Alabama.
The defendant hid the body near a cemetery, disposed of Armstrong's personal belongings in the woods, and dumped his car into Little River Canyon. The defendant and Miss Pace fled to Dallas, Texas, where they remained until the defendant was arrested on October 17, 1982.
In a statement given to the police on the day of his arrest, the defendant admitted his participation in the disposal of Armstrong's body but not in the killing. On October 31st, the defendant gave a second statement, in which he admitted killing Armstrong. This second statement corroborated and verified the testimony of Miss Pace in all important and substantial respects.
At trial, the fact that the defendant killed Armstrong by striking him with a beer pitcher was never contested. The only disputed issue was one of intent *494 whether the defendant could be deemed guilty of manslaughter or criminally negligent homicide rather than murder.
At the hearing on the motion for new trial, the defendant's appointed counsel, who were different from his trial counsel, attacked the competency of trial counsel, arguing that trial counsel was constitutionally ineffective because of his failure to investigate and raise the issue of the defendant's competency to stand trial and his failure to present an insanity defense.
At the hearing, clinical psychologist Michael Holt testified that he examined the defendant in September of 1983, approximately three months after his trial in June of 1983. Based upon his review of the defendant's mental history and his five hours of tests, observations and interviews with the defendant, he concluded (1) that there was "borderline evidence concerning his sanity at the time of the crime," (2) that "[t]here was strong evidence indicating that he was probably not competent at the time of the trial in June," (3) "that David was experiencing a major depressive disorder, which was recurrent, and has psychotic episodes," and (4) "that he is also experiencing a borderline personality disorder."
Holt reviewed the defendant's medical records and testified that the defendant attempted suicide in 1974 at the age of 15. In August of 1981, a little over one year before the crime occurred, the twenty-two year old defendant shot himself in the stomach in a "very serious suicide attempt." He was then involuntarily committed to the North Alabama Regional Hospital in Decatur from September 11, 1981, until December 4, 1981, when he was released with a diagnosis of "a major depression and a schizo type of personality disorder." While in the hospital, the defendant hoarded his medication in a planned suicide attempt and upon discovery went on a hunger strike for five days. Dr. Holt testified that the defendant was given a "wide variety of medication" during his treatment at the North Alabama Regional Hospital, including stelazine and thorazine, both "neuroleptic drugs that are usually given for individuals who have serious thought disorders, usually who are psychotic." Three antidepressant medications were also prescribed for him and, according to Dr. Holt, at one point shock treatment was considered. Based upon his examination of the hospital records, Dr. Holt "questioned" whether the defendant "was sufficiently improved to be discharged from the hospital." Holt stated that the defendant "needed out-patient treatment that was recommended, but it was not followed through." In his opinion, the defendant was incompetent to stand trial at the time of his prosecution.
When asked by the trial judge if he had any questions of Dr. Holt, trial counsel stated that after the trial the defendant had filed a complaint with the grievance committee of the State Bar Association alleging that he did not represent the defendant properly. Counsel stated: "The psychiatrist [sic] has raised some issues here, some of which I agree with, and some which I violently disagree with. And I think he's talking off the top of his head based on what David Dill has told him."
Trial counsel testified at the hearing on the motion for new trial. After the preliminary hearing, the defendant told him that he had been in a mental hospital for depression and had attempted suicide at one time. Counsel testified that he made no attempt to secure the records of the North Alabama Regional Hospital because "insanity was not a viable defense" based upon his conversations with the defendant, his experience of five years as a prosecutor and five years as a defense attorney, and his investigation into the facts and circumstances of this case, including the statements the defendant had made to others indicating his guilt:
"The fact that he had fled the state after the offense, borrowed the money and fled the state, in my opinion, negated a viable insanity defense.
"When I talked to Davidlistening to the psychiatrist [sic]he was very, very upset, he was under considerable pressure and he was very suspicious of me.

*495 "I think that based on my records I must have spent physically with David between November the 4th and the time of the trial, some nine hours, not counting trial time, talking to David, and spending time with him. And as I say, he was overwrought, he was depressed, he was distressed, he was concerned, he was very suspicious of me. In fact, I was very paranoid. And even at the time I felt that if this did not go David's way, that I would be here today. And for that reason I kept very close records of the amount of time that I spent.
". . .
"[D]uring the representation of David, I was kind of paranoid myselfI received a call from Nancy Pace [after trial but prior to sentencing] in which she related to me that David had called her and asked her to change her testimony.
". . .
"[O]ccasionally when I would see David he would try out another story on me. And perhaps at that time I should have become suspicious of his mental capacity.
". . .
"And like I said, I was very suspicious myself and perhaps overly defensive, but I had constantly had the feeling that I was being set-up.
". . .
"He told a number of people that he whacked the guy with a beer mug. And that was, of course, one of the reasons why I said, look, Nancy Pace has told her story, and a couple of other people have told their stories, and they all fit together."
Defense counsel testified that he never considered ("at no time") an insanity defense: "It never crossed my mind." He stated that he did not feel that it would have been in the defendant's best interest to review his medical records. Counsel never asked to see the defendant's medical records.
"I was satisfied that what he told me, and what everybody else told me, that he had been in for depression and had had a previous thing where he had been depressed and tried to kill himself. That in relation to this and the sequence of events just wasn't going to wash, as far as I was concerned. When I was in the DA's office, I took great pleasure in tearing psychiatrists apart. And based on reviews and psychiatric journals and everything else that I had read, I knew that in my opinion that any psychiatrist that got up here on the stand in this particular instance just wasn't going to get it, it wasn't going to apply. And based on the law."
Counsel stated that the defendant's activities after the homicide were consistent with an awareness of the criminality of his conduct, "especially the disposing of the body and taking the license tag out of the car, and the mats out of the trunk and all those other things, and then hiding them, burying them, strewing them all over the mountainside."
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court articulated the "benchmark" for judging ineffectiveness claims:
"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 104 S.Ct. at 2064.
In applying this test on reviewing a claim of ineffective counsel, we are guided by the principles of Strickland:
1. A claim of ineffective assistance of counsel requiring a reversal of a conviction requires proof (a) that the defendant's counsel's performance was "deficient" by "showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (b) that this deficient performance prejudiced the defendant by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 104 U.S. at 2064.
*496 2. "[T]he proper standard for attorney performance is that of reasonably effective assistance." 104 U.S. at 2064.
3. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." 104 S.Ct. at 2065. The reasonableness of counsel's conduct must be judged on "the facts of the particular case, viewed as of the time of counsel's conduct." 104 S.Ct. at 2066.
4. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 104 S.Ct. at 2066.
5. In proving ineffectiveness the defendant has the burden of proof and "must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" 104 U.S. at 2066.
6. Even a professionally unreasonable error by counsel "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 104 S.Ct. at 2067.
7. The defendant must affirmatively prove that any deficiencies in counsel's performance were prejudicial except in certain cases in which prejudice is presumed, i.e., the actual or constructive denial of counsel altogether or an actual conflict of interest. 104 S.Ct. at 2067.
8. In carrying this burden of prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 104 S.Ct. at 2068. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." 104 S.Ct. at 2069.
9. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." 104 S.Ct. at 2068.
10. These principles of review are not "mechanical rules:"
"Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." 104 S.Ct. at 2069.
With significant relevance to the issue, the Supreme Court stated:
"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
"... In particular, what investigation decisions are reasonable depends critically on such information [supplied by the defendant]. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may *497 not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." 104 S.Ct. at 2066-67 (emphasis added.)
Although trial counsel knew that the defendant had previously attempted suicide and had been admitted to a mental hospital, he did not further investigate his client's mental history because he thought "insanity was not a viable defense." He testified that he had seldom seen the insanity defense used successfully. Furthermore, defense counsel testified that because of the defendant's flight and concealment of the evidence of the crime, he was convinced that his client was aware of the criminality of his act, and, therefore, could not be insane.
We do not believe the fact that defense counsel had seldom seen the insanity defense used successfully qualifies as a "reasonable professional judgment" supporting his failure to investigate the defendant's mental history. 104 S.Ct. at 2066. "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in event of conviction." American Bar Association Standards for Criminal Justice § 4.1 ("The Defense Function") (2d ed. 1980). In Davis v. Alabama, 596 F.2d 1214 (5th Cir.1979), vacated as moot, 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980), the Fifth Circuit Court of Appeals had before it a case similar to the present one. The Court concluded that defense attorneys who were on notice of their client's mental history but failed to investigate or pursue an insanity defense did not provide effective assistance of counsel. The Court of Appeals observed:
"Davis's attorney knew that Davis had a history of mental problems, knew that insanity was his only possible defense, knew, or thought that Davis himself would be little help in developing the defense, knew what possible outside sources might be developed, and ... knew that without some investigation they had practically no defense to offer. Still they made no effort to investigate or develop the possible sources of evidence. This is not a borderline case; it is a clear breach of the duty a defense attorney owes to his client."
596 F.2d at 1219.
"Effective representation hinges on adequate investigation and pre-trial preparation.... [A]s a general rule an attorney must investigate a case in order to provide minimally competent professional representation." Crisp v. Duckworth, 743 F.2d 580, 583 (7th Cir.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985).
"[W]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel.... While we do not require that a lawyer be a private investigator in order to discern every possible avenue which may hurt or help the client, we do require that the lawyer make an effort to investigate the obvious. Pretrial investigation, principally because it provides a basis upon which most of the defense case must rest, is, perhaps, the most critical stage of a lawyer's preparation.... In this regard, the Eleventh Circuit has enunciated the rule that effective representation, consistent with the sixth amendment, also involves `the independent duty to investigate and prepare.'" House v. Balkcom, 725 F.2d 608, 617-18 (11th Cir.), cert. denied, ___ U.S. ___, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).
Counsel has a duty to conduct a reasonable investigation of the possibility of an insanity defense where the accused has a demonstrated history of mental illness. Alvord v. Wainwright, 725 F.2d 1282, 1288-89 (11th Cir.), modified, 731 F.2d 1486 (11th Cir.), cert. denied, ___ U.S. ___, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984); *498 Mauldin v. Wainwright, 723 F.2d 799, 800 (11th Cir.1984) ("In a case where the sole theory of defense is one of insanity due to alcoholism, we believe that minimally effective representation must include an investigation into the defendant's past and present medical condition.") "Counsel has an affirmative obligation to make further inquiry where the facts known and available, or within minimal diligence accessible to defense counsel raise a reasonable doubt as to the defendant's mental condition." Loe v. United States, 545 F.Supp. 662, 666 (E.D.Va.1982). Walker v. Mitchell, 587 F.Supp. 1432, 1439-40 (E.D.Va.1984) ("If the law provides that the defendant cannot be convicted of the crime charged if he was too intoxicated to form the requisite intent, and preliminary indications create reasonable grounds for suspecting that the defendant may have been so intoxicated, then counsel has a duty to make further inquiry"). "This court does not sit to second guess strategic and tactical choices made by trial counsel. However, when counsel's choices are uninformed because of inadequate preparation, a defendant is denied the effective assistance of counsel." United States v. DeCoster, 487 F.2d 1197, 1201 (D.C.Cir.1973), after remand, 624 F.2d 196 (D.C.Cir.1979).
A distinction must be made between a failure to investigate the mental history of an accused and the rejection of insanity as a defense after proper investigation. "[A]n attorney with considerable experience in criminal matters and, therefore, in dealing with a wide range of people ... may be presumed to have some ability to evaluate the mental capacity of his client." United States ex rel. Rivera v. Franzen, 594 F.Supp. 198, 202 (N.D.Ill.1984). "As a practical matter, when deciding whether to present an insanity defense, the criminal defendant's lawyer is truly the final psychiatrist. It is not the role of a court to doubt his judgment. But here, it cannot be said that counsel ever made a judgment [because counsel did not have sufficient information, although available, on which to base an intelligent decision]." United States ex rel. Lee v. Rowe, 446 F.Supp. 1039, 1047 (N.D.Ill.1978). Trial counsel may not reject the insanity defense "`without pursuing the basic inquiries necessary to evaluate its merits intelligently.'" Rivera, 594 F.Supp. at 203. See also Martin v. Maggio, 711 F.2d 1273, 1280 (5th Cir. 1983), rehearing denied, 739 F.2d 184 (5th Cir), cert. denied, ___ U.S. ___, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984); Pickens v. Lockhart, 714 F.2d 1455, 1467 (8th Cir. 1983) ("[I]t is only after a full investigation of all the mitigating circumstances that counsel can make an informed, tactical decision about which information would be the most helpful to the client's case").
Defense counsel may not rely upon his client to bring to his attention facts indicating an insanity defense precisely because an accused cannot be expected to know that his psychiatric history afforded him a potential defense. Rivera, 594 F.Supp. at 203. Counsel has a duty to make an independent investigation and prepare the defense and cannot permissibly delegate to his client which defenses to a criminal prosecution will be investigated and pursued. Rivera, 594 F.Supp. at 203, citing Bell v. Watkins, 692 F.2d 999, 1009 (5th Cir.1982), cert. denied sub nom. Bell v. Thigpen, 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983). A defendant is not responsible for failing to reveal certain information to his attorney "unless the attorney has made every reasonable effort to elicit the information, has made his client aware of the sort of information that might be relevant, and has given his client the opportunity to disclose it." Davis, 596 F.2d at 1220.
Trial counsel's decision not to present an insanity defense may be unreasonable "because of [his] almost total lack of relevant information" because of his total failure to investigate. Rivera, 594 F.Supp. at 203. See also Beavers v. Balkcom, 636 F.2d 114, 115 (5th Cir.1981) ("By not following up on the telephone call to the state mental hospital where Beavers had been previously treated, counsel fell short of the thorough pre-trial investigation to which the appellant was entitled").
*499 Although defense counsel testified that he was "satisfied" with what the defendant and "everyone else" told him about the defendant's mental history (that the defendant had been hospitalized for depression), the record does not reveal in sufficient detail what information counsel obtained from whom. "[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions." Strickland, 104 S.Ct. at 2066-2067. The record in this case does not even reveal whether or not trial counsel even discussed an insanity defense with the defendant.
Trial counsel testified that he was convinced that the defendant was aware of the criminality of his actions because of his conduct following the killing. Although, "[f]light from justice, and its analogous conduct have always been deemed indicative of a consciousness of guilt," 2 Wigmore, Evidence § 276(4) (Chadbourn rev. 1979) (quoted in Cunningham v. State, 426 So.2d 484, 490 (Ala.Cr.App.1982), such conduct is "not conclusive evidence of sufficient sanity to justify criminal punishment," Boswell v. State, 63 Ala. 307, 320, 35 Am.Rep. 20 (1880) (quoted in Cunningham v. State, 426 So.2d at 491) (emphasis added)), but merely presents a jury question on the issue of sanity, Cunningham v. State, 426 So.2d at 490-91.
Defense counsel's professional relationship with the defendant was not one of mutual confidence. Counsel testified that he himself was "paranoid," felt as if he were being "set up," and was "suspicious" and "overly defensive." The attitude of any trial counsel may well affect the quality of his representation of the defendant and lessen the zeal with which he prepared to defend the accused. In Goodwin v. Balkcom, 684 F.2d 794 (11th Cir.1982), cert. denied, 460 U.S. 1098 (1983), the Court of Appeals for the Eleventh Circuit held that the general apologetic and less-than-enthusiastic attitude of court-appointed counsel rendered him ineffective in a murder case. Counsel testified that he emphasized to the jury his court-appointed status, explaining that it was a small town and he had to "live there" and was concerned he might have acquired a bad reputation in the community for defending accused murderers. It is clear that the general "attitude" of counsel can, and often does, have a direct correlation to the vitality of the defense he provides for his client.
The record before this Court is too deficient to support a decision of counsel's effectiveness or ineffectiveness. Counsel's own testimony furnishes evidence to reach the contradictory conclusions that counsel never even considered a defense of insanity and that after some inquiry into the issue he concluded that it would not have been a valid or reasonable defense.
The conduct of defense counsel must be judged by the reasonably effective assistance test of Strickland, rather than the farce, sham, or mockery of justice standard of ineffectiveness previously employed in this State. Hoppins v. State, 440 So.2d 1125 (Ala.Cr.App.1983). Because the record is lacking in the particulars of trial counsel's knowledge of the defendant's mental history and because this issue was raised in the circuit court before the decision of the Supreme Court of the United States in Strickland v. Washington, we remand this case for an evidentiary hearing on the question of the effectiveness of trial counsel guided by the principles enunciated in this opinion. In reaching this decision, we are acutely aware that the "`particularly critical interrelation between expert psychiatric assistance and minimally effective representation of counsel'" has been "`repeatedly stressed.'" Beavers, 636 F.2d at 116.
The evidentiary hearing, at which the defendant is entitled to be present, should include an inquiry into the conversations between defense counsel, the defendant, and others regarding both the defendant's competency at the time of trial and his sanity at the time of the crime. Since consistency between the accused's version of the crime and the police reports may reasonably lead counsel to believe that further investigation is not required, it is critical *500 that trial counsel reveal what explanation, if any, the defendant gave for striking Armstrong. See Beans v. Black, 757 F.2d 933, 936 (8th Cir.1985). Trial counsel should explain in detail his trial strategy and why the defense of insanity was rejected, as well as any other factor he considered in representing the defendant. Trial counsel should specifically state what investigation and preparations he pursued in planning his defense. A transcript of this hearing shall be made and forwarded to this Court upon completion.
REMANDED WITH DIRECTIONS.
TYSON, TAYLOR and PATTERSON, JJ. concur.
McMILLAN, J., dissents without opinion.

ON RETURN TO REMAND
BOWEN, Presiding Judge.
On remand, the trial court conducted an evidentiary hearing as directed by this Court, at which both the defendant and his trial counsel testified. This Court has reviewed this record and is impressed with the preparation and effort that trial counsel devoted to his client's defense. Defense counsel's testimony clearly shows that the decision not to secure the defendant's medical records was made only after counsel had thoroughly discussed the issue of insanity with the defendant and either the defendant's mother or grandmother or both. Counsel's testimony, as well as the State's evidence against the defendant, convince this Court that the decision not to pursue the insanity defense was one of trial strategy made after reasonable investigation and based upon sound and experienced professional judgment. Based on the testimony presented in the record, it is the conclusion of this Court that trial counsel was effective under the standards and principles of Strickland v. Washington, supra.
This Court is also impressed, although not favorably, by the lies perpetrated by the defendant. The defendant even admitted that he had "lied a significant amount," and his own counsel was compelled to admit the defendant's lack of veracity. The record bears out the remark of the Assistant District Attorney: "Now, the defendant, himself, got on this witness stand and admitted that he has lied over and over and over and over and over. And, in addition to that, he has said that everybody else lied."
For these reasons, the judgment of the circuit court is affirmed.
OPINION EXTENDED;
JUDGMENT AFFIRMED.
All Judges concur.