791 So.2d 383 (1999)
Max Landon PAYNE
v.
STATE.
CR-97-2503.
Court of Criminal Appeals of Alabama.
July 9, 1999.
Opinion on Return to Remand February 25, 2000.
Rehearing Denied April 21, 2000.
*388 Bruce D. Nestor, Iowa City, Iowa; and Ellen L. Wiesner, Brookfield, Wisconsin, for appellant.
Bill Pryor, atty. gen., and Kathryn D. Anderson, asst. atty. gen., for appellee.
FRY, Judge.
The appellant, Max Landon Payne, appeals from the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P. In 1994, Payne was convicted of two counts of intentional murder committed during a kidnapping (§ 13A-5-40(a)(1), Ala.Code 1975) and one count of intentional murder during a robbery in the first degree (§ 13A-5-40(a)(2), Ala.Code 1975). In accordance with §§ 13A-5-45 and -46, a sentencing hearing was held before the jury, and the jury, by a vote of 11-1, recommended a sentence of death. After performing an independent weighing of the aggravating and mitigating circumstances and considering the jury's recommendation, the trial court sentenced Payne to death.
Payne's conviction and sentence of death were affirmed by this court and by the Alabama Supreme Court. Payne v. State, 683 So.2d 440 (Ala.Cr.App.1995), aff'd. 683 So.2d 458 (Ala.1996). The United States *389 Supreme Court denied certiorari review in Payne v. Alabama, 520 U.S. 1146, 117 S.Ct. 1319, 137 L.Ed.2d 481 (1997).
On February 24, 1998, Payne, through counsel, filed a Rule 32 petition, raising numerous claims. On August 10, 1998, the circuit court dismissed Payne's petition, finding the majority of Payne's claims precluded. As for Payne's claim of ineffective assistance of appellate counsel and newly discovered evidence, the trial court "granted leave to amend the petition and/or refile on issues not adjudged as being precluded." (C.R.64.) On September 21, 1998, before filing an amended petition, Payne filed his notice of appeal, establishing this court's jurisdiction in this matter. He then filed an amended petition. We affirm the trial court's order in part and remand the case for further proceedings.
The state's evidence at the 1994 trial tended to show the following. On March 23, 1992, Braxton Brown, the owner of West Point Grocery, was robbed, abducted, and shot twice in the face. Braxton died as a result of the shotgun wounds. Testimony indicated that the robbery occurred around 8:33 p.m. on March 23, 1992. Two witnesses testified that they saw Payne at the West Point Grocery at 8:30 p.m. Payne's sister and his girlfriend testified that they saw Payne and Brown together later that evening and that they had with them three bank deposit bags and two cartons of Marlboro cigarettes. Testimony further indicated that Payne's girlfriend tried to dissuade Payne from robbing and kidnapping Brown. When Payne was arrested, law enforcement officers found various items belonging to West Point Grocery and to Braxton Brown in Payne's duffel bag.[1]
On appeal, Payne contends that the trial court erred in ruling that his claims were precluded. Specifically, he argues that his claims of ineffective assistance of trial counsel and newly discovered evidenceof a Brady violation[2]were not precluded. He further maintains that the trial court erred in denying his petition without conducting an evidentiary hearing.
We conduct our review of the trial court's denial of Payne's petition in light of the following principles:
"`"`The plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence.' Thompson v. State, 615 So.2d 129 (Ala. Cr.App.1992)." Cade v. State, 629 So.2d 38, 41 (Ala.Cr.App.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).'
"`In addition, "the procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed." State v. Tarver, 629 So.2d 14, 19 (Ala.Cr.App. 1993).'"
Davis v. State, 720 So.2d 1006, 1013 (Ala.Cr.App.1998)(citing Brownlee v. State, 666 So.2d 91, 93 (Ala.Cr.App.1995)).

I.
Payne contends that "the trial court incorrectly ruled that [his] claims of ineffective assistance of trial counsel were precluded because they were not raised on direct appeal." (Appellant's brief at p. 1. )
At the time of Payne's conviction, claims of ineffective assistance of trial counsel could not be considered for the first time on appeal, and the procedure outlined in Ex parte Jackson, 598 So.2d 895 (Ala. 1992), was in effect. Jackson was subsequently *390 overruled by Ex parte Ingram, 675 So.2d 863 (Ala.1996). Payne was sentenced to death on June 13, 1994. The trial court allowed Payne's trial counsel to withdraw and it appointed appellate counsel for Payne on June 23, 1994. Because Payne was represented by different counsel at trial and on appeal, any claim of ineffective assistance of trial counsel should have been raised in a motion for a new trial in order to preserve the issue for review. Ex parte Jackson. Thus, the trial court correctly concluded that Payne's claims regarding ineffective assistance of trial counsel are procedurally barred by Rule 32.2(a)(3) and (a)(5) as claims that could have been, but were not, raised at trial or on appeal. See Bryant v. State, 739 So.2d 1138 (Ala.Cr.App.1998); Dyson v. State, 722 So.2d 782 (Ala.Cr.App.1997); Hartzog v. State, 733 So.2d 461 (Ala.Cr. App.1997); Andersch v. State, 716 So.2d 242 (Ala.Cr.App.1997); Arrington v. State, 716 So.2d 237 (Ala.Cr.App.1997); Alexander v. State, 679 So.2d 227 (Ala.1996); Covington v. State, 671 So.2d 109 (Ala.Cr.App. 1995); Alderman v. State, 647 So.2d 28 (Ala.Cr.App.1994); Ex parte Jackson, supra. Cf. Mason v. State, 768 So.2d 981 (Ala.Cr.App.1998)(applying Ex parte Jackson in a capital case); Bush v. State, 695 So.2d 70, 128 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997); and Brown v. State, 712 So.2d 1112 (Ala.Cr. App.1997).
Additionally, the following claims in Payne's petition are procedurally barred under Rule 32.2(a)(2) and (5), Ala.R.Crim. P., because they were raised and addressed at trial and could have been, but were not, raised on appeal:
1. Payne's claim that "the trial court violated his rights to due process and effective assistance of counsel when it denied his motion to have expert psychological and psychiatric assistance with the evaluation, preparation, and presentation of his defense."
2. Payne's claim that because he "was tried in Cullman County, where the killing at issue occurred and where pretrial publicity made it impossible to select a fair and impartial jury, [he] was deprived of a fair trial by an impartial jury in violation of the Constitutions and laws of the United States and the State of Alabama."
3. Payne's claim that "improper judicial rulings and conduct before, during and after the guilt and penalty phase of his trial denied him due process, a fair trial, and a reliable and fair sentencing procedure in violation of the constitutions and laws of the State of Alabama (U.S.C.A., Amendments 5, 6, 8 and 14)."
4. Payne's claim that because "his appointed counsel was the brother-in-law of the district attorney he was denied due process and his right to effective and zealous representation by counsel (U.S.C.A., Amendments 5, 6, 8 and 14)."
The following claims in Payne's petition are procedurally barred under Rule 32.2(a)(2) and (4), Ala.R.Crim.P., because they were raised and addressed at trial and/or on appeal:
1. Payne's claim that "because the judge and jury did not hear crucial mitigating evidence and because of numerous errors throughout his trial, [he] was deprived of a fair and reliable capital sentencing process in violation of the Constitutions and laws of the United States and the State of Alabama." See Payne, 683 So.2d at 456-58.
2. Payne's claim that "it would be a gross miscarriage of justice to allow [his] current conviction and sentence of death to stand because [he] is actually innocent of the capital offense for which he was *391 convicted." See Payne, 683 So.2d at 456-58.
3. Payne's claim that "the trial court denied [him] due process by duplicating the finding of conviction as the sole factor of aggravation, and because the aggravator was not any narrower than the underlying crime (U.S.C.A., Amendments 5, 8, and 14)." See Payne, 683 So.2d at 456-58.
The following claims in Payne's petition are procedurally barred under Rule 32.2(a)(3) and (5), Ala.R.Crim.P., because they could have been, but were not, raised and addressed at trial or on appeal:
1. Payne's claim that he "was denied effective assistance of counsel due to trial counsel's failure to obtain and utilize competent psychiatric and psychological assistance in the evaluation, preparation, and presentation of [his] defense."
2. Payne's claim that the "trial court's lengthy oral instruction on the definition of reasonable doubt standard was inconsistent, diluted the reasonable doubt standard, and permitted the jury to substitute a moral certainty and fair-minded person standard for a juror's individual evidentiary standard of beyond a reasonable doubt, all in violation of [his] rights to due process of law and his entitlement to effective assistance of counsel."
3. Payne's claim that he "was denied effective assistance of counsel due to his trial attorney's failure to present at sentencing persuasive and available mitigation evidence, denying [him] a fair and reliable sentencing process and violating his rights under the Constitutions and laws of the United States and State of Alabama."
4. Payne's claim that the trial court denied him due process by failing to find as a mitigating factor Payne's lack of a significant criminal history.
5. Payne's claim that "the trial court violated [his] due process rights by failing to find as a factor of statutory and/or nonstatutory mitigation that James Beavers admitted the commission of the killing and [that] Mr. Payne's role in the capital offense was minor."
6. Payne's claim that he "was denied due process in the sentencing phase when the prosecutor argued future dangerousness as a reason to impose the death penalty, thereby presenting to the jury uncharged factors of aggravation that exceeded the scope of the proper factor of aggravation."
7. Payne's claim that he "was denied his right to a fair, impartial, and representative jury as guaranteed by the United States Constitution and the laws and Constitution of the State of Alabama [by the following:]
"i. The judge's secretary's dismissal of potential jurors from the jury pool denied [him] rights to due process of law, trial by an impartial jury, and effective assistance of counsel.
"ii. [He] was denied due process, effective assistance of counsel, and a trial by an impartial jury when two jurors overheard extrajudicial comments made by the victim's family in a courthouse bathroom to the effect that: `I can't believe he colored his hair before trial.'
"iii. [He] was denied his right to due process and a jury trial when part of the impaneling of the jury was conducted in his absence.
"iv. The trial judge failed to excuse for cause several potential jurors and improperly excused other members of the venire.
"v. The method of selecting the grand jury and jury venire in Cullman *392 County deprived [him] of his right to a trial by a jury of his peers."
8. Payne's claim that the "trial court's fundamentally flawed instruction to the jury on the theory of accomplice liability resulted in extreme prejudice to [his] due process rights and deprived [him] of effective assistance of counsel (U.S.C.A., Amendments 5, 6 and 14)."
9. Payne's claim that he "was denied due process because the intent instructions failed to distinguish between the intents required for various forms of homicide and the instructions created a mandatory presumption that any act which causes death demonstrates the intent to kill (U.S.C.A., Amendments 5, 6, 8, and 14).
"i. The trial court denied [him] equal protection and due process by not distinguishing the intent required for capital murder, the intent required for noncapital murder, and the recklessness required for manslaughter, thereby denying a meaningful jury determination of the lesser included offense of simple murder.
"ii. The Alabama homicide statutes create a mandatory or burden-shifting presumption that the intent to kill is the only intentional act for an act which causes death (U.S.C.A., Amendments 5, 6, and 14).
"iii. The trial court denied [him] due process by not adequately and properly presenting to the jury the lesser-included offense of felony-murder, and the essential elements of that lesser-included offense."
10. Payne's claim that "the trial court's instruction on mitigating circumstances violated due process because it created a substantial possibility that the jury interpreted the instruction to prevent [it] from considering a mitigating circumstance unless [it] unanimously agreed on that circumstance (U.S.C.A., Amendments 5, 6, 8, and 14)."
11. Payne's claim that "by providing a judicial officer with the ultimate decision of life and death, the State of Alabama deprived [him] of due process and his right to trial by jury (U.S.C.A., Amendments 5, 6 and 14)."
12. Payne's claim that he "was denied due process and the effective assistance of counsel when the sentencing court rested its decision in part on erroneous, and or inaccurate, incomplete information in the PSI [pre-sentence investigation report] which [he] had no meaningful opportunity to explain or deny (U.S.C.A., Amendments 5, 6, and 14)."
13. Payne's claim that "Alabama's judicially ordered electrocution of [him] at a given specific date and time, constitutes unusual and cruel punishment, and a denial of equal protection, and due process of law under the constitutions and laws of the United States and State of Alabama (U.S.C.A., Amendments 5, 8, 9 and 14)."
14. Payne's claim that "the trial court's instructions on the weighing of aggravating and mitigating circumstances and the role of the jury in the sentencing process denied [him] due process of law and a fair and reliable capital sentencing process, in violation of the constitution and laws of the United States and the State of Alabama (U.S.C.A., Amendments 5, 8 and 14)."
15. Payne's claim that he "was denied effective assistance of counsel at both the guilt and penalty phase of the trial proceedings, in violation of the constitutions and laws of the United States and State of Alabama (U.S.C.A., Amendments 5, 6, 8 and 14).
"i. [He] was denied effective assistance of counsel when at the conclusion of the guilt phase of trial, counsel *393 failed to object to improper statements by the prosecutor in the argument before the jury.
"ii. [He] was denied effective assistance of counsel at sentencing hearing before the jury when trial counsel failed to object to improper statements by the prosecutor in the argument before the sentencing jury (U.S.C.A., Amendments 6 and 14).
"iii. [He] was denied effective assistance of counsel when trial counsel's main theory of defense was that [he] was nothing more than an accomplice and that as an accomplice [he] could not be guilty of capital murder.
"iv. [He] was denied effective assistance of counsel by trial counsel's failure to contest or cross-examine the state's expert witnesses or present expert testimony on Payne's behalf.
"v. [He] was denied effective assistance of counsel when trial counsel failed to renew the motion for a court-ordered mental exam after the return of the guilty verdict but prior to the sentencing phase.
"vi. [He] was generally denied the effective assistance of counsel at the guilt phase of his trial in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of Alabama.
"vii. [He] was generally denied the effective assistance of counsel at the penalty phase of his trial in violation of his right to a fair and reliable capital sentencing process and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of Alabama."
(C.R.307-76.)

II.
Payne contends that we should remand this cause to the circuit court for an evidentiary hearing on his claims of newly discovered evidencea Brady violation and of ineffective assistance of appellate counsel. The state agrees.[3] Based on the pleadings before us, we are unable to determine whether Payne's claim of newly discovered evidence was properly precluded. Therefore, we must remand this cause for further consideration. Additionally, Payne's claims that appellate counsel was ineffective may also, if true, be meritorious. "`When a petition contains matter which, if true, would entitle the petitioner to relief, an evidentiary hearing must be held.'" Bryant v. State, 739 So.2d at 1140, quoting Smith v. State, 581 So.2d 1283, 1284 (Ala.Cr.App.1991), citing Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala. 1985).
Accordingly, this case is remanded to the circuit court for an evidentiary hearing pursuant to Rule 32.9, Ala.R.Crim.P. to address Payne's claims of ineffective assistance of appellate counsel and newly discovered evidencethe alleged Brady violation. The trial court is directed to "make specific findings of fact relating to each material issue of fact presented," as required by Rule 32.9(d), Ala.R.Crim.P. Due return should be filed in this court no later than 56 days from the date of this opinion and shall include the trial court's written statement of the court's findings and the transcript and/or affidavits, if any, from the proceeding.
*394 AFFIRMED IN PART; REMANDED WITH DIRECTIONS.
LONG, P.J., and McMILLAN, COBB, and BASCHAB, JJ., concur.

On Return to Remand
FRY, Judge.
On July 9, 1999, we remanded this cause to the circuit court with directions that it address the claims in Payne's Rule 32, Ala.R.Crim.P., petition alleging newly discovered evidencein effect allegations of a Brady[1] violation and ineffective assistance of appellate counsel.[2]Payne v. State, 791 So.2d 383 (Ala.Cr.App.1999).
The circuit court has complied with our directions and on return to remand has filed an order containing a written statement of its reasons for rejecting Payne's allegations of a Brady violation and of ineffective assistance of appellate counsel.
Initially, we note that the circuit court denied Payne's Rule 32 petition on August 10, 1998, stating: "[I]t is, therefore, Ordered, Adjudged and Decreed that the petition filed herein is denied." (C.R.64.) Although the order seems to grant Payne leave "to amend the petition and/or refile on issues not adjudged as being precluded," we conclude that because the court denied the petition and because Payne filed his notice of appeal on September 21, 1998, removing jurisdiction from the circuit court, Payne was foreclosed from amending the petition. See Rule 32.7(b), Ala.R.Crim.P. ("Amendments to pleadings may be permitted at any stage of the proceedings prior to entry of judgment" (emphasis added)).
Although this Court dismissed Payne's appeal from this order on September 28, 1998, 741 So.2d 498 (Ala.Cr.App.1998)(table), this Court ordered the appeal to be reinstated on October 26, 1998. Payne filed an amended Rule 32 petition in the circuit court on January 13, 1999. That court, however, did not have jurisdiction because Payne's appeal was pending; therefore, that filing, as well as all subsequent filings, were void. We remanded this cause on July 9, 1999. The record on return to remand indicates that at the evidentiary hearing, the circuit court, upon agreement of both parties, permitted Payne's counsel to present evidence with regard to claims made in the amended petition.
The general rule is that jurisdiction of one case cannot be in two courts at the same time. McKinney v. State, 549 So.2d 166 (Ala.Cr.App.1989). Jurisdiction of this cause at the time Payne filed his amended Rule 32 petition rested with this Court. Therefore, the matters addressed with regard to the amended Rule 32 petition cannot be considered by this Court because they were never properly before the circuit court.
Furthermore, even if we could consider the claims raised in the amended Rule 32 petition, we have no means of adequately reviewing those contentions because a copy of the amended Rule 32 petition, which the circuit court mentioned at the evidentiary hearing, was not made a part of the record on return to remand. Thus, *395 our review is limited to Payne's claims of ineffective assistance of appellate counsel and the alleged Brady violation, as pleaded in the original petition filed on February 24, 1998.

I.
Because of the complicated history of the proceedings and rulings regarding this Rule 32 petition, we feel compelled to address the numerous complaints by Payne at the evidentiary hearing on remand regarding his inability to conduct discovery.
Payne filed his petition on February 24, 1998. On May 13, 1998, Payne filed a motion for discovery of "institutional records" and files, and a motion for discovery of prosecution files and records. Although these motions essentially list the information sought and do not offer any good cause as to why the discovery was necessary or exactly what Payne believed the information he sought to discover would reveal, the circuit court granted Payne's motions on May 22, 1998. When the circuit court denied Payne's petition on August 10, 1998, it vacated these discovery orders. There is no indication in the record, and Payne has made no representation, that from the time the circuit court ordered discovery (May 22) until the time that it vacated the orders (August 10) Payne made any effort to obtain the information he had requested. We do not believe that the time to begin discovery is after the date set for the hearing to which the discovery items are directed; therefore, we question Payne's diligence in conducting discovery.
Payne appealed the circuit court's denial of postconviction relief and this Court remanded the cause for an evidentiary hearing on July 9, 1999. This Court ordered that due return of the cause be filed within 56 days of issuance of its opinion. See Payne v. State, 791 So.2d at 393. On July 21, 1999, the circuit court set the hearing for August 20, 1999, but the hearing was continued until August 27, 1999. Although Payne filed an application for rehearing with this Court on July 23, 1999, filed an application on August 2, 1999, requesting more time for the evidentiary hearing to be held, and filed a supplemental motion for more time on August 10, 1999, Payne did not file a motion for discovery with the circuit court. We note that although in his application for rehearing and his motions to this Court, Payne represented that as of the dates on the filings, he had been "unable to conduct basic discovery, take depositions, review defense counsel's trial and appellate file, or review of any portion of the State's trial file," Payne made no efforts to obtain the discovery other than the original request he made on May 13, 1998.
On August 16, 1999four days before the original evidentiary date scheduled for the hearing and after representations about discovery had been made to this CourtPayne filed a motion for discovery, while this case was on remand in the circuit court. In light of Payne's lack of diligence in conducting discovery, we seriously question the timeliness of Payne's discovery request and his efforts to conduct discovery while his case was on remand. If Payne had moved the circuit court for discovery when this Court remanded the case, he could have been conducting discovery from July 9.
It does appear from the record that Payne's counsel made efforts to obtain the prosecutor's file a week before the hearing. However, there was some confusion, and the file was not released until just before the hearing. The record further indicates that when the state realized the problem it tried to make arrangements for Payne's counsel to review the file, but Payne's counsel, who was from Iowa, had already *396 left town. Additionally, we note that while hearing argument from Payne's counsel about his not having received a report from Dr. Lawrence Maier,[3] the circuit court elicited an admission from Payne's counsel that he had not requested that a subpoena be issued to Taylor Hardin Medical Unit for Payne's medical records, which would have included a copy of Dr. Maier's report. Thus, while it appears from the record that Payne had time, which we acknowledge may have been limited, during which he could have conducted discovery, Payne did not make a good faith effort to do so.
Furthermore, as did the circuit court, we reject the following argument by Payne:
"We have made diligent efforts to try to obtain discovery in this matter. I would also note that any delay in terms of filing a discovery motion after remand, was based on our understanding that the Alabama Supreme Court was preparing on the case of Ex parte Land. It would be thought that case would be determined to determine whether or not Payne had a right to discovery and provide guidance to this Court as to whether or not Mr. Payne was entitled to discovery. As soon as that decision came down, we proceeded to file a motion for discovery."
(R. 24-25.) While we believe that it was serendipitous that the Supreme Court released Ex parte Land, [Ms. 1971816, August 6, 1999],[*] in August, Payne's efforts to conduct discovery were at most minimal. Unlike the circumstances in Land, where the circuit court had denied discovery, the circuit court here granted Payne broad discovery from an extremely general motion. The court's orders granting discovery were effective for over two months before they were vacated. Payne, however, did not take advantage of the circuit court's order and made little, if any, effort to pursue discovery during the two months before the circuit court's denied his petition and vacated the discovery orders or while the case was pending on remand in the circuit court. Furthermore, because Payne did have access to the prosecutor's file, and his jail records, as well as some of his institutional records even though his time for review was limited, we conclude that Payne was not denied discovery.
Finally, Payne claims that the circuit court erred in denying his motion for funds for a mental health expert. We have previously rejected a similar argument. See Ford v. State, 630 So.2d 111 (Ala.Cr.App. 1991), aff'd. 630 So.2d 113 (Ala.1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994).

II.
"When reviewing a trial court's ruling on a postconviction petition, this Court must determine whether the trial court abused its discretion. Jones v. State, 724 So.2d 75 (Ala.Cr.App.1998); Elliott v. State, 601 So.2d 1118 (Ala.Cr.App.1992)." Brown v. State, [Ms. CR-98-0343, October 1, 1999] ___ So.2d ___ (Ala.Cr.App.1999). Moreover, it is well settled that "[i]f the *397 circuit judge has personal knowledge of the facts underlying the allegations in the [Rule 32] petition, he may deny the petition without further proceedings so long as he states the reasons for the denial in a written order." Sheats v. State, 556 So.2d 1094, 1095 (Ala.Cr.App.1989). The judge in this Rule 32 proceeding, Judge Robert Austin, also presided over Payne's trial. We recognize that Judge Austin was in a much better position than this Court to consider Payne's claims because of his personal knowledge of the facts surrounding Payne's allegations. Brown v. State, supra.

III.
On appeal from his Rule 32 petition, Payne alleged that a Brady violation occurred when "the State of Alabama specifically contacted a key witness, [Ricky Smith] prior to trial, causing [Smith] to change his testimony and through improper interference to testify untruthfully." (Payne's brief to this Court at p. 5.)
"`"In order to establish a Brady violation, appellant must prove: `(1) The prosecution's suppression of evidence; (2) The favorable character of the suppressed evidence for the defense; (3) The materiality of the suppressed evidence.' Knight v. State, 478 So.2d 332, 335 (Ala.Cr.App.1985)....
". . . .
"`"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome."'
". . . .
"`... "The concept of `suppression' implies that the Government has information in its possession of which the defendant lacks knowledge and which the defendant would benefit from knowing."'"
Davis v. State, 720 So.2d 1006, 1026-27 (Ala.Cr.App.1998), cert. denied, 525 U.S. 1149, 119 S.Ct. 1049, 143 L.Ed.2d 55 (1999). (Citations omitted.)
Because this Brady claim was first presented in a Rule 32 petition, Payne can obtain relief only if it involves "newly discovered evidence." Newly discovered evidence is defined under Rule 32.1, Ala. R.Crim.P., as follows:
"Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
". . . .
"(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
"(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
"(2) The facts are not merely cumulative to other facts that were known;
"(3) The facts do not merely amount to impeachment evidence;
"(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
"(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received."
*398 Rule 32.1(e), Ala.R.Crim.P. We note that because of the conjunctive "and" between (4) and (5), Payne must meet all five prerequisites of Rule 32.1(e), Ala.R.Crim.P., in order to prevail. Cf. Brown v. State, supra.
The circuit court, in its order on return to remand, made the following findings with regard to this claim:
"The `newly discovered evidence' and Brady material [are] actually an old story wrapped in a new cover. Petitioner claims that Mr. Ricky Smith, ex-brother-in-law, who testified at trial, was promised help in a divorce case by the District Attorney if he would testify falsely at trial. However, Mr. Smith's actual testimony was that while being interviewed by the District Attorney prior to Payne's trial, when Smith attempted to discuss the divorce case the response by the D.A. was that `he couldn't get involved in that.' The D.A. further volunteered `but that after the trial was over, if I would come see him, he would help me get counsel.'
"Mr. Smith's sole purpose at this hearing is to convince the Court that he is a person who gives perjured testimony for small, even insignificant favors, such as helping to locate suitable counsel in a divorce action. Even should the court choose to believe such a confessed liar, Smith's account of the exchange appears to be little more than a public official attempting to fend off the attempts by an unsavory individual to solicit special treatment. Even Smith admits that he was told that the District Attorney `could not get involved with that.' But when such testimony is considered in contrast with that of the District Attorney who flatly denies making any promises in exchange for testimony, the Court does not find the testimony of Ricky Smith to be credible or worthy of belief.
"It is important to note that at trial the State rested without the District Attorney calling Ricky Smith as a witness. In fact, at trial, Smith was initially called by the defense as a witness and at that time Smith claimed it was not the District Attorney, but rather the defendant's family that was threatening him concerning his testimony. The nature of Smith's contradictory testimony and tendency to disregard the truth was given full airing in front of the jury when investigator NeSmith testified for the defendant that Smith had given a contradictory version of what happened than the version he testified to in Court. The Court finds all of the above constitutes neither newly discovered evidence or any violation of Brady v. Maryland."

(C.R. on remand 194-95.)
The circuit court's findings in its order are supported by the record and are sufficient to support its denial of relief on this allegation. Payne failed to establish that the evidence was newly discovered. Specifically, Payne failed to establish that the facts relied upon were not cumulative to other facts known, that the facts did not amount to impeachment evidence, that if the facts had been known at trial the result would probably have been different, and that the facts establish Payne's innocence. Rule 32.1(e), Ala.R.Crim.P. Therefore, we conclude that Payne's alleged Brady claim has failed to meet the requirements of newly discovered evidence and that Payne was not entitled to relief with regard to this claim.

IV.
In his Rule 32 petition, Payne raised a general allegation that his appellate counsel was ineffective. (C.R.359-60.) This claim was completely unsupported by *399 a statement of specific facts. It therefore failed to meet the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. Furthermore, because of the conclusory nature of Payne's general allegation in his petition, Payne failed to meet his burden under Rule 32.3, Ala.R.Crim.P., of pleading and proving by a preponderance of the evidence facts necessary to entitle him to relief.
In his petition, Payne did, however, specifically plead (within other claims) the following allegations of ineffective assistance of appellate counsel:
1. That appellate counsel failed to argue on appeal that trial counsel was ineffective for failing to "obtain and utilize competent psychiatric and psychological assistance" when presenting his defense (C.R.313-15);
2. That appellate counsel was ineffective because he did not argue on appeal that the trial court had erred in refusing to instruct the jury on the lesser-included offense of felony murder (C.R.339-40);
3. That appellate counsel was ineffective for not challenging the accuracy of the presentence investigation report (C.R.354); and
4. That appellate counsel was ineffective for failing to raise the following ineffective-assistance-of-trial-counsel claims on direct appeal:
a. Trial counsel's failure to object to improper statements allegedly made by the prosecutor during argument in the guilt phase and sentencing phase of his trial (C.R.366);
b. Trial counsel's failure to establish an adequate defense that he was not guilty of capital murder (C.R.369);
c. Trial counsel's failure to "contest or cross-examine the state's expert witnesses or present expert testimony on [his] behalf (C.R.370);
d. Trial counsel's failure to "renew the motion for a court-ordered mental exam after the return of the guilty verdict but prior to the sentencing phase (C.R.370);
e. Trial counsel's failure to provide adequate representation due to inadequate funding (C.R.371); and
f. Trial counsel's failure to investigate and to present adequate mitigation evidence during the sentencing phase of his trial (C.R.372).
Because it appears that Payne did not present evidence at the evidentiary hearing with regard to claims 2, 3, 4.a, 4.b, 4.c, and 4.d, we conclude that he has abandoned these claims and we will not review them. Cf. Brownlee v. State, 666 So.2d 91, 93 (Ala.Cr.App.1995). Moreover, even if we were to attempt to review these claims, we would conclude that Payne has failed to prove by a preponderance of the evidence that appellate counsel's performance was deficient. Rule 32.3, Ala.R.Crim.P.
Payne's claims of ineffective assistance of appellate counsel depend on whether Payne proves that appellate counsel failed to present on direct appeal a claim that would have entitled him to relief. Thus, in order to obtain relief, Payne must establish that his claims of ineffective assistance of trial counsel are meritorious and that, if they had been raised on direct appeal, the outcome of his appeal would have been different. Bryant v. State, 739 So.2d 1138 (Ala.Cr.App.1998).
"To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that he was prejudiced by that deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This court must avoid using the benefit of hindsight *400 and must evaluate the counsel's conduct at the time of its occurrence. Ex parte Lawley, 512 So.2d 1370 (Ala.1987). `When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, 534 (Ala.Cr.App.1985)." Hallford v. State, 629 So.2d 6, 9 (Ala.Cr.App.1992).
"`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act, or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
"Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987). `Counsel's conduct must be considered within the context of the facts of the particular case and as of the time of the alleged misconduct.' Ex parte Baldwin, 456 So.2d 129, 134 (Ala.1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985)."
State v. Tarver, 629 So.2d 14, 17 (Ala.Cr. App.1993).
With regard to Payne's claim that his appellate counsel failed to argue on appeal that trial counsel was ineffective for failing to "obtain and utilize competent psychiatric and psychological assistance" during his trial, the circuit court made the following findings of fact:
"4. Prior to trial, based upon motion of trial counsel, a psychiatric exam was ordered by the Court to determine the defendant's competency to stand trial and his mental state at the time of the offense. An extensive evaluation was performed by Dr. Maier, an independent expert hired by the Court. The report indicated that petitioner was drinking heavily at the time of the offense, noted the mental anxiety of the defendant prior to trial, considered the medications that the defendant was taking to deal with depression, and further considered the defendant's history of alcohol abuse. The expert evaluation offered no evidence of mental disease or defect or diminished capacity of the defendant.
"5. Pretrial investigation was made of a Dr. Larimore concerning a claim by petitioner that he had suffered head trauma in an automobile accident. Dr. Larimore's deposition was taken. In addition, investigation was made of a Dr. Coleman at Woodland Community Hospital. All of this information was made available to the jury in this cause. Depositions of Dr. Larimore and Dr. Coleman were played to the jury."
(C.R. on remand 192.) The circuit court's findings of fact are supported by the record. Additionally, we note that Payne's *401 trial counsel, Gregory A. Nichols, testified that at the time he requested a mental evaluation for Payne he believed that Payne was competent to stand trial. Recognizing, however, that Payne had had an unusual childhood and that there were perhaps underlying mental problems, he made the request to determine their influence on his adult behavior. Payne was evaluated by a licensed mental health expert. None of the expert's opinions included a finding that Payne, as he argued in his Rule 32 hearing, suffered extreme mental and emotional duress at the time of the offense or that he was incapable of appreciating the criminality of his conduct. Thus, Payne has not shown that his trial counsel's failure to present expert testimony on his mental health was outside "the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Additionally, Payne had not shown that additional testimony about his mental health would have changed the outcome of his trial.
As we noted in Samra v. State, 771 So.2d 1108, 1120 (Ala.Cr.App.1999):
"`A distinction must be made between a failure to investigate the mental history of an accused and the rejection of insanity as a defense after proper investigation. "An attorney with considerable experience in criminal matters and, therefore, in dealing with a wide range of people ... may be presumed to have some ability to evaluate the mental capacity of his client." United States ex rel. Rivera v. Franzen, 594 F.Supp. 198, 202 (N.D.Ill. 1984). "As a practical matter, when deciding whether to present an insanity defense, the criminal defendant's lawyer is truly the final psychiatrist. It is not the role of a court to doubt his judgment.... Trial counsel may not reject the insanity defense "`without pursuing the basic inquiries necessary to evaluate its merits intelligently.'" Rivera, 594 F.Supp. at 203. See also Martin v. Maggio, 711 F.2d 1273, 1280 (5th Cir.1983), rehearing denied, 739 F.2d 184 (5th Cir.), cert. denied, 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984); Pickens v. Lockhart, 714 F.2d 1455, 1467 (8th Cir.1983) ("It is only after a full investigation of all the mitigating circumstances that counsel can make an informed, tactical decision about which information would be the most helpful to the client's case").'
"Dill v. State, 484 So.2d 491, 498 (Ala. Cr.App.1985) (emphasis original). See also Roy v. State, 680 So.2d 936 (Ala.Cr. App.1996)."
Because Payne has failed to establish that his ineffective-assistance-of-trial-counsel claim is meritorious, he has failed to prove by a preponderance of the evidence that his appellate counsel was ineffective for failing to present this claim.
We find absolutely no support for Payne's contention that he was denied effective assistance by his trial counsel because counsel's funding was inadequate. Payne's trial counsel stated: "I would have done the same job for [Payne] regardless of whether I had been well compensated or not." (R. on return to remand 84.) Payne did not offer any evidence to refute this statement. Thus, we reject Payne's claim with regard to his trial counsel's performance and, accordingly, conclude that Payne's appellate counsel was not ineffective. See McNair v. State, 706 So.2d 828 (Ala.Cr.App.1997), cert. denied, 523 U.S. 1064, 118 S.Ct. 1396, 140 L.Ed.2d 654 (1998); and Hallford v. State, 629 So.2d 6 (Ala.Cr.App.1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
*402 Next Payne contends that his appellate counsel was ineffective for failing to raise a claim that his trial counsel was ineffective in presenting mitigation evidence during the sentencing phase of his trial.
"In reviewing this claim, we are guided by the following principles. In Daniels v. State, 650 So.2d 544, 568-70 (Ala. Cr.App.1994), cert. denied, 514 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995), we stated the following regarding a claim that trial counsel had been ineffective during the penalty phase of a capital murder trial:
"`In determining whether Haas was ineffective at original sentencing, ... we recognize that the
"`"two-pronged Strickland analysis applies whether the ineffectiveness complained of occurred in the defendant's trial or in a subsequent adversarial sentencing proceeding. However, in a challenge to the imposition of a death sentence, the prejudice prong of the Strickland inquiry focuses on whether `the sentencer... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'"
"`Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir.1992) (citation omitted), cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993). We also recognize that
"`"[w]hile `[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness,' see Blake v. Kemp, 758 F.2d 523, 533 (11th Cir.1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. Strickland only requires that counsel's actions fall within the wide spectrum of what can be considered reasonable assistance of counsel."
"`White v. Singletary, 972 F.2d 1218, 1224 (11th Cir.1992). The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:
"`"An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir.1986). First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. Funchess v. Wainwright, 772 F.2d 683, 689-90 (11th Cir.1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted."

*403 "`Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir.1988).
"`Applying the foregoing principles to the issue of whether Haas provided effective assistance of counsel at original sentencing, we conclude that the appellant's claim is without merit. Although the defense called only one witness at the sentencing hearing, that witness was Mrs. Hebert, the appellant's mother, who pleaded for the appellant's life. Mrs. Hebert had retained Haas, conferred with him at length, paid all his trial fees, and, by the time of sentencing, had exhausted her funds. The circuit court's sentencing order stated that "it is apparent to the court that [Mrs. Hebert] was devoted to [the appellant]."
"`Since Haas had spoken with Mrs. Hebert about the appellant and had observed by her words and actions that she appeared to be "devoted" to the appellant, we cannot fault Haas for failing to discover the appellant's "traumatic" childhood, in which, according to later testimony by Dr. Herlihy, Mrs. Hebert's "emotional rejection" of her son played a large part. Compare Bertolotti v. Dugger, 883 F.2d 1503, 1520 (11th Cir.1989) (defense counsel held to have provided effective assistance on claim that counsel overlooked or failed to investigate evidence of defendant's traumatic childhood, where counsel interviewed defendant's parents), cert. denied, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990). See also Beets v. Collins, 986 F.2d 1478, 1488-89 (5th Cir.1993) (although counsel did not "conduct a thorough investigation of [the defendant's] medical, mental, and psychological history," which would have revealed that the defendant "was raised in abject poverty, experienced a debilitating hearing loss, was afflicted with learning disabilities, had received head injuries as a child, and suffers from battered woman syndrome," the court observed that the defendant never gave her attorney "any hint that she had been abused by previous husbands or boyfriends. Neither [the defendant] nor any other member of her family ever conveyed to [the attorney] any information giving him reason to believe that she had a history of being physically abused."), rehearing granted, 998 F.2d 253 (5th Cir.1993); Cantu v. Collins, 967 F.2d 1006, 1016 (5th Cir.1992) (despite fact that counsel failed to present evidence of defendant's "low IQ, emotional immaturity, troubled youth, trauma as a result of his parents' divorce, and appearance of neglect," court found that counsel had "thoroughly investigated these claims, consulting with his client as well as [client's] father and brother for possible mitigating evidence," and the claims were not supported in fact), cert. denied, [509] U.S. [926], 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); Wilkerson v. Collins, 950 F.2d 1054, 1064-65 (5th Cir.1992) (although attorney failed to discover or develop mitigating evidence that defendant had a "deprived family background," and psychological and mental "limitations," the court observed that "trial counsel interviewed [the defendant], his mother, and other relatives. Neither [the defendant] nor his relatives were able to supply the names of potential defense witnesses. Investigation did not reveal reason to suspect that [the defendant's] mental capacity was in any fashion impaired."), cert. denied, [509] U.S. [921], 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); Thompson v. State, 581 So.2d 1216, 1238 (Ala.Cr. App.1991) (upholding circuit court's *404 finding that counsel, who presented only the testimony of defendant's mother at sentencing, was not ineffective for failing to present evidence of the defendant's violent family background, addiction and substance abuse), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992).
"`We hold that Haas was not ineffective at the original sentencing proceeding.'
"650 So.2d at 568-70 (emphasis omitted).
"Furthermore, counsel is not necessarily ineffective simply because he does not present all possible mitigating evidence. `Although the failure to conduct a reasonable investigation of possible mitigating evidence may constitute ineffective assistance of counsel, "counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation." Stanley v. Zant, 697 F.2d 955, 965 (11th Cir.1983), cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).' Lundy v. State, 568 So.2d 399, 403 (Ala. Cr.App.1990).
"`When a decision to not put on certain mitigating evidence is based on a "strategic choice," courts have always found no ineffective performance. Moore v. Maggio, 740 F.2d 308 (5th Cir.1984), cert. denied, 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985); Lowenfield v. Phelps, 817 F.2d 285 (5th Cir.1987), aff'd, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). No two lawyers would try a case exactly the same way.
"`We cannot say that counsel's performance is deficient because he failed to call more witnesses at the sentencing phase. "The decision not to call a particular witness is usually a tactical decision not constituting ineffective assistance of counsel." Oliver v. State, 435 So.2d 207, 208 (Ala.Cr.App. 1983). At the hearing on the Rule 32 petition, the appellant's mother, two of his aunts, an uncle, and several old friends offered character testimony. Most of these witness did not have contact with the appellant near the time of the murder. There has never been a case where additional witnesses could not have been called. The appellant presented relatives and personal friends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify. To hold otherwise would clog an already overburdened system with repetitious testimony. The appellant has failed to satisfy either prong of the Strickland test.'
"State v. Tarver, 629 So.2d 14, 21 (Ala. Cr.App.1993).
"`With regard to McKinnon's representation of Morrison at the punishment-fixing and sentencing phases of his trial, we find that the observations of the court in Clark v. Dugger, 834 F.2d 1561, 1568 (11th Cir.1987), are appropriate:
"`"The failure to conduct a reasonable investigation of possible mitigating evidence may render counsel's assistance ineffective. Lightbourne v. Dugger, 829 F.2d 1012, 1025 (11th Cir.1987); Thompson v. Wainwright, 787 F.2d 1447, 1450 (11th Cir.1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). `After a sufficient investigation, however, "counsel *405 may make a reasonable strategic judgment to present less than all possible available evidence in mitigation."' Lightbourne, 829 F.2d at 1025 (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985), cert. denied, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987) and Stanley v. Zant, 697 F.2d 955, 965 (11th Cir.1983), cert. denied, sub nom. [Stanley v. Kemp,] 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)). In essence, `counsel has no absolute duty to present mitigating character evidence.' Id. (quoting Mitchell, 762 F.2d at 889). [Counsel] conducted a reasonable investigation to determine the availability of appropriate mitigating evidence and simply made a tactical decision to not present some of the available mitigating evidence. In this circuit, [counsel's] decision is `accorded a strong presumption of correctness which is "virtually unchallengeable."' Id. (quoting Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir.1987) and Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). Given the alternatives ... faced, [counsel's] handling of the penalty phase was not unreasonable. See Stanley, 697 F.2d at 958-70. We therefore conclude that there has been no showing of ineffective assistance nor prejudice to defendant in the way trial counsel prepared and tried [this] case."'
"Morrison v. State, 551 So.2d at 445.
"`We find that the holding of Fleming v. Kemp, 748 F.2d 1435, 1452 (11th Cir.1984), cert. denied, 475 U.S. 1058, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986), is applicable here:
"`"In summary, we are not persuaded by petitioner's argument that ... [defense counsel] rendered him ineffective assistance of counsel. Petitioner's examples of professional dereliction dissolve away under close scrutiny, leaving at best a handful of colorable claims. A defense attorney is not ineffective solely because his client is sentenced to death. `Intrusive posttrial inquiry into attorney performance,' such as that which has been required in this case, may `dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.' Strickland v. Washington, [466] U.S. at [690], 104 S.Ct. at 2066. Counsel's performance, here, ensured a fundamentally `fair trial' which `produced a just result.' Id. at [686], 104 S.Ct. at 2064. There is no reason to set aside petitioner's conviction or his penalty on account of the representation he received."'
"Bell v. State, 518 So.2d 840, 847 (Ala. Cr.App.1987), cert. denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988)."
Pierce v. State, [Ms. CR-96-1668, March 2, 1999] ___ So.2d ___, ___ (Ala.Cr.App. 1999).
With the foregoing principles in mind, we conclude that the circuit court adequately assessed and rejected the evidence presented to support Payne's contention that his trial court's failure to investigate and to present adequate mitigation evidence during the sentencing phase of his trial and we adopt the following portion of the order:
"3. More than a year before the trial, the attorneys for petitioner requested extra-ordinary expenses for an investigator *406 to assist them in the preparation of the case. The request was made by motion filed by trial counsel which states:
"`Counsel is required to obtain information relative to Mr. Payne's medical history, educational history, employment, training history, family and social history, religious and cultural influences. Counsel must direct an investigator to obtain records from all doctors, hospitals, schools, employers, interview people with knowledge of the aspects of Mr. Payne's background.'
"This motion was granted by Judge Riley. Johnny NeSmith, a retired agent of the Alabama Bureau of Investigation was hired to assist petitioner in his trial. NeSmith contacted witnesses from as far away as Mobile and actually testified at petitioner's trial. Mr. NeSmith spent in excess of 50 hours investigating witnesses and leads in the case.
". . . .
"6. Trial counsel adequately gathered information from petitioner's family prior to trial. This is readily apparent from the amount of background material on the petitioner's life which was presented to the jury. Petitioner's sister and mother actually testified on behalf of the petitioner at trial. A claim of petitioner is that trial counsel failed to establish a `rapport' with the petitioner's family members, and that this failure led to the family failing to give full assistance to the defense and further resulted in mother and sister testifying in an ineffective manner. The argument appears to assume that the attorneys had some sort of duty to rehearse or `coach' the witnesses before trial. It can only be speculated that had such rehearsing and coaching occurred and the outcome of the trial remained the same, then the petitioner would allege such inducement by the attorneys as ineffectiveness because (it would be alleged) everyone knows that spontaneous and unrehearsed testimony is far more emotional and effective than rehearsed or coached testimony. As to the lack of `rapport' affecting the trial defense, petitioner's attorney handling the Rule 32 petition questioned trial counsel about a remark made by the District Attorney in closing arguments referring to the zealous defense of Payne by his family. The District Attorney's characterization of this defense as a `conspiracy' among the family to protect Payne certainly belies the allegation that there was no cooperation between the family and petitioner's defense.
"It is apparent to this Court that arguments of Rule 32 counsel concerning the relationship between trial counsel and the petitioner's [family] is hindsight based upon the results of the trial. This may be fueled by the family's natural desire to come to the aid of the petitioner. From the testimony at trial and from the Court's own observation of the petitioner's family and trial counsel during trial, the Court finds there was no deficiency on the part of trial counsel.
". . . .
"8. This Rule 32 hearing was far more remarkable for what evidence was not brought out than what evidence was produced. The appellate counsel, whose performance is alleged to have been ineffective, was not called as a witness. The other trial counsel, Robert Sapp, was not called as a witness even though Mr. Nicholas stated it was Sapp who handled the mental/psychological part of the pretrial motions while Nicholas handled the change of venue motion. Nicholas was called by the petitioner to testify as to what actions were taken by trial counsel, even though Nicholas testified that he has since lost his trial file due to *407 changes of residences and law offices since the trial. No attempt was made to ascertain or demonstrate any deficiencies in counsel performance by Sapp. Payne himself, although present in Court did not testify as to his relationship and preparations with his trial counsel, nor as to any deficiencies in his counsel's performance.
"9. Much of the focus of petitioner's Rule 32 counsel was criticism of trial counsel performance in eliciting mitigating evidence at trial. Rule 32 counsel's complaint deals not so much with the fact that certain evidence was not brought out, but that it was not presented in precisely the same manner, or in the same detail as Rule 32 counsel would have liked. This criticism by Rule 32 counsel extends even to the fact that trial counsel did not ask exactly the same questions which Rule 32 counsel now says should have been asked (R. 168.) Rule 32 counsel further criticizes trial counsel for not asking the same witnesses the same questions in the penalty phases as was asked in the guilt phase. This, Rule 32 counsel asserts `failed to highlight' (R. 187.) certain information already heard and considered by the jury. Rule 32 counsel at one point in the evidentiary hearing claims ineffective assistance of appellate counsel for failing to reinterview every defense witness at trial in order to determine whether their trial testimony was insufficiently `vivid' or `compelling' as a result [of] the defense counsel's failure to establish the proper degree of `rapport' which Rule 32 counsel feels necessary.
"The decisions as to whether or not to present evidence of mental impairment, alcohol abuse by the defendant, prior history of family disfunction, evidence of the offense being committed by another and non-family testimony as mitigation, were all trial strategy decisions based upon the investigations of the attorneys and the investigator, discussions and conferences with the family members and the evidence which counsel knew that the prosecution possessed."
(C.R. on remand 191-96.)
The evidence presented by Payne at the evidentiary hearing was merely an attempt to establish an ineffective-assistance-of-trial-counsel claim by calling the same defense witnesses presented at trial and arguing that Payne's counsel should have elicited more elaborate testimony from these witnesses. The evidence at the hearing indicated that Payne's trial counsel established a good relationship with Payne's family members. Merely because trial counsel did not present the evidence as Payne now believes he should have presented does not establish that trial counsel was ineffective. To so conclude would require us to engage in hindsight and speculation, which we will not do.
Additionally, Payne argues that trial counsel should have presented evidence of his conformity to confinement while he awaited trial. We note, however, that the jail records produced at the hearing do not support such a finding. While incarcerated awaiting his trial, Payne violated jail policies and rules. Because the evidence did not support a finding that Payne's behavior while he was incarcerated provided mitigation evidence and trial counsel decided not to present the evidence for that very reason, Payne has failed to establish that his trial counsel was ineffective.
Furthermore, we reject Payne's argument that trial counsel presented insufficient mitigation evidence of his history of alcohol abuse and drug abuse and his alleged intoxication at the time of the offense, of physical and sexual abuse within his family, and of his mental and emotional disabilities. Numerous witnesses testified during the guilt phase about Payne's consumption *408 of alcohol on the day of the offense and about the various forms of physical abuse that Payne suffered and witnessed. Additionally, evidence was presented from Payne's physicians concerning his mental and emotional faculties and the effects of drug and alcohol consumption of his faculties. That evidence was also placed before the jury during the penalty phase. In light of the evidence presented during the guilt phase and the penalty phase of the trial, we conclude that Payne's trial counsel was not ineffective for not presenting additional evidence. Thus, appellate counsel was not ineffective for not raising such a claim.

V.
In conducting our review on return to remand, we note that we inadvertently failed to address Payne's claims that he was denied due process and a right to effective assistance of counsel by the state's "withholding of probative evidence from the psychiatrist ordered to evaluate the accused" and "when the sentencing court rested its decision in part on erroneous, and/or inaccurate, incomplete information in the PSI (presentence investigation report) which the petitioner had no meaningful opportunity to explain or deny." (C.R.351, 354.) These claims are procedurally barred by Rule 32.2(a)(3) and (5), Ala.R.Crim.P., because they could have been, but were not, raised and addressed at trial or on appeal.
For the foregoing reasons, the circuit court did not abuse its discretion in denying Payne's postconviction petition.
AFFIRMED.
LONG, P.J., and McMILLAN, COBB, and BASCHAB, JJ., concur.
NOTES
[1] A complete recitation of the facts is contained in Payne v. State, 683 So.2d 440, 443-47 (Ala.Cr.App.1995).
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[3] During oral argument the state requested that we remand this cause to the circuit court for an evidentiary hearing on the claims of newly discovered evidence and ineffective assistance of appellate counsel.
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] In oral argument before this Court, Payne and the state requested that we remand this cause to the circuit court for a hearing on Payne's claims of ineffective assistance of appellate counsel. Specifically, Payne argued, and the state agreed, that he had presented facially meritorious claims of appellate counsel's failure to present on direct appeal claims of ineffective assistance of trial counsel.
[3] Dr. Maier, a licensed clinical psychologist and certified forensic examiner, examined Payne before trial to determine whether he was competent to stand trial.
[*] Note from the reporter of decisions: On June 2, 2000, on application for rehearing, the Supreme Court withdrew its August 6, 1999, opinion in Ex parte Land and substituted another one. The August 6, 1999, opinion carried the judgment line "PETITION GRANTED; WRIT ISSUED." The June 2, 2000, opinion carried the judgment line "OPINION OF AUGUST 6, 1999, WITHDRAWN; OPINION SUBSTITUTED; [REHEARING] APPLICATION GRANTED; PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED." See 775 So.2d 847.