The State appeals from the trial court's grant of Jabari Tarik Gause's petition for postconviction relief, filed pursuant to Rule 32, Ala. R.Crim. P.
Gause was convicted in a single trial, on November 16, 2001, of trafficking in marijuana, *Page 459 
a violation of § 13A-12-231(1)(a), Ala. Code 1975: failure to affix a tax stamp, a violation of § 40-17A-4, Ala. Code 1975: and possession of marijuana in the second degree, a violation of §13A-12-214, Ala. Code 1975. He was sentenced to 15 years' imprisonment on the trafficking conviction; that sentence was split and he was ordered to serve the mandatory minimum term of 3 years' imprisonment, with the remainder to be served on 5 years' probation. Additionally, he was sentenced to three years' imprisonment on his conviction for failing to affix a tax stamp. Lastly, the petitioner was sentenced to 12 months' hard labor in the county jail on the possession conviction. All the sentences were to run concurrently. Gause was ordered to pay a fine of $25,000, a fine of $1,000 pursuant to the Alabama Demand Reduction Assessment Act, § 13A-12-281, Ala. Code 1975, and $200 to the Victims Compensation Fund. Gause was also ordered to pay a fine of $500 on the possession conviction.
In his petition, filed on April 23, 2003, and his amended petition, filed on May 28, 2003, Gause made the following specific claims of ineffective assistance of counsel:
 "The counsel for [Gause's] performance fell below the standard of care in his defense and the relevant portions of the trial transcript will be provided. That further in support thereof the Petitioner avers specifically as follows with respect to his trial counsel's ineffectiveness:
 "a. That [Gause's] attorney called the States' informant to the stand who was not called by the State and who testified on several occasions that [Gause] was his supplier of drugs. This witness is Justin Fadlevich and served no useful purpose but to help seal [Gause's] fate; guilty of trafficking in marijuana.
 "b. That [Gause's] attorney called the Defendant in his case in chief and elicited from him that he knew he was carrying marijuana which was counter productive to his innocence.
 "c. The defense attorney's theory of entrapment was inconsistent with eliciting from [Gause] at trial that [Gause] knew he was carrying marijuana and this was the first time the police and the informant had worked together with respect to [Gause].
 "d. The trial court admonishes [defense attorney] on at least seven occasions many of which are in the presence of the Jury and addresses issues of proper legal form and protocol. At R: 206, line 13, the Court tells [defense counsel] that he is trying the Court, that its not fair to his client and he needs to stop it. At R: 200, line 19, The Court instructs [defense counsel] on what is a lawful question.
 "e. The Court admonishes [defense counsel] for failure to have his witnesses at trial in a timely manner and questions [him] regarding the use of subpoenas. R: 209-211.
 "f. In a case of possession of marijuana, joined at trial with the trafficking case, [defense counsel] elicits testimony from [Gause] that marijuana found in his bedroom was for personal use; this is an admission of guilt. Why?
 "g. [Defense counsel] apologizes to the court on at least eight (8) occasions in a day and a half trial.
 "That the cumulative effect of his trial counsel's actions deprived [Gause] of a fair trial.
 "That further, to the extent appellate counsel was required to raise the issue of ineffective assistance of trial counsel on appeal and did not he was ineffective and [Gause] was not at fault. That *Page 460 
[Gause's] motion for new trial was denied by operation of law on March 5, 2002. That the record for appeal was not yet complete."
The record indicates that an evidentiary hearing was conducted on the petition on August 15, 2003. At the end of the hearing, the trial court granted Gause a new trial and placed the case on the docket for retrial.
On appeal, the State argues that the trial court abused its discretion by granting Gause a new trial on the ground of ineffective assistance of counsel where Gause failed to establish that trial counsel committed any unreasonable professional errors that affected the outcome of the trial.
To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Ex parte Lawley,512 So.2d 1370, 1372 (Ala. 1987). "The performance component outlined inStrickland is an objective one: that is, whether counsel's assistance, judged under `prevailing professional norms,' was `reasonable considering all the circumstances.'" Daniels v.State, 650 So.2d 544, 552 (Ala.Crim.App. 1994) (quotingStrickland, 466 U.S. at 688, 104 S.Ct. 2052). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."Strickland, 466 U.S. at 690, 104 S.Ct. 2052. In a Rule 32 proceeding, the petitioner has "the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.3, Ala. R.Crim. P. SeeRhone v. State, [Ms. CR-02-0493, January 30, 2004] ___ So.2d ___ (Ala.Crim.App. 2004); Fortenberry v. State, 659 So.2d 194
(Ala.Crim.App. 1994). Additionally, this Court applies an abuse-of-discretion standard in evaluating the findings made by the trial court in a post-conviction proceeding.
In Adkins v. State, ___ So.2d ___, ___ (Ala.Crim.App. 2004) (opinion on return to third remand), this Court stated:
 "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it had proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
"[Strickland v. Washington,] 466 U.S. [668] at 689[,104 S.Ct. 2052, 80 L.Ed.2d 674] (1984) (citations omitted). As the United States Supreme Court further stated: *Page 461 
 "`[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
"466 U.S. at 690-91, 104 S.Ct. 2052. `An accused is entitled" `not [to] errorless counsel, and not [to] counsel judged ineffective by hindsight, but [to] counsel reasonably likely to render and rendering reasonably effective assistance.'"' Bui v.State, 717 So.2d 6, 27 (Ala.Crim.App. 1997), quoting Thompsonv. State, 615 So.2d 129, 134 (Ala.Crim.App. 1992), quoting in turn Haggard v. Alabama, 550 F.2d 1019, 1022 (5th Cir. 1977).
"As the United States Court of Appeals for the Eleventh Circuit stated in Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000), cert. denied, 531 U.S. 1204[, 121 S.Ct. 1217,149 L.Ed.2d 129] (2001):
 "`The purpose of ineffectiveness review is not to grade counsel's performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [, 80 L.Ed.2d 674 (1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir. 1992) ("We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately."). We recognize that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or "what is prudent or appropriate, but only what is constitutionally compelled." Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638
(1987).
"`. . . .
 "`Because the reasonableness of counsel's acts (including what investigations are reasonable) depends "critically" upon "information supplied by the [petitioner]" or "the [petitioner]'s own statement or actions," evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims. Strickland, 104 S. Ct. at 2066. "[A]n inquiry into counsel's conversations with the [petitioner] may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." Id. ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue that investigations may not later be challenged as unreasonable.").' *Page 462 
 "Chandler, 218 F.3d at 1313-19 (footnote omitted). `We have recognized that, given these principles and presumptions, "the cases in which habeas [similar to Rule 32] petitioners can properly prevail . . . are few and far between."' Chandler, 218 F.3d at 1313, quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)."
See also Dill v. State, 484 So.2d 491 (Ala.Crim.App. 1985).
Additionally, in Dobyne v. State, 805 So.2d 733, 754
(Ala.Crim.App. 2000), this Court stated:
 "`While counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, "this duty only requires a reasonable
investigation." Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir. (Ala.) 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (emphasis added). See Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; Morrison v. State, 551 So.2d 435
(Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). Counsel's obligation is to conduct a "substantial investigation into each of the plausible lines of defense." Strickland, 466 U.S. at 681, 104 S.Ct. at 2061
(emphasis added). "A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made." Id., 466 U.S. at 686, 104 S.Ct at 2063.
 "`"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information."
"`Id., 466 U.S. at 691, 104 S.Ct. at 2066.'
 "Jones v. State, 753 So.2d [1174], at 1191 [(Ala.Crim.App. 1999)]."
The record indicates that before any testimony was taken, the trial judge presiding over the Rule 32 evidentiary hearing allowed counsel for Gause to read into the record portions of the original trial transcript that counsel alleged contained errors constituting ineffective assistance of counsel. Gause presented no other testimony.
The State then presented the testimony of the attorney who represented the petitioner at trial. Defense counsel testified that he had been retained by Gause's mother to represent him at the preliminary hearing in the district court and at the trial in the circuit court. He testified that he met with Gause numerous times. He testified that he asked both Gause and his friend, William Stroud, who was with Gause on the evening of Gause's arrest, to compose a written statement as to the events which occurred on the day leading up to the arrest. Gause informed him that he and his friend, William, had gone to Clanton to look at an automobile that was for sale and, while en route home, he decided to go by Justin Fadlevich's house to pay him for some tires he had bought from him. Gause told defense counsel that Justin's father owned or had owned a tire store, and that Justin was able to purchase tires for his family and him at wholesale prices. Defense counsel had a copy of the bill of sale for the discounted tires, in the amount of $318, which was provided to him by Gause. Defense counsel testified that Gause told him that before going to Justin's house, William and he had stopped at *Page 463 
a BP gasoline service station. While there, Gause had called Justin to tell him he was in town and on his way over. Gause told defense counsel that he had then talked to an acquaintance at the BP station, by the name of "Josh," whom he had recognized from a racetrack, who had a car similar to his, and who was also a friend of Justin's. Gause said that when he had informed the acquaintance that he was going over to Justin's, he had asked him to take a bag to him. Gause told counsel that he had agreed to do so, had taken the shopping bag, which was sealed, and had thrown it in the back of his trunk. He told defense counsel that he had not looked in the bag. He had been arrested as he walked through Justin's front door carrying the bag, which had contained over three pounds of marijuana.
Defense counsel testified that after talking privately with Gause, obtaining the two statements, and meeting with Gause and his parents, he thought the best trial strategy would be to assert a defense of entrapment, or alternatively that the State's confidential informant, Justin Fadlevich, had set Gause up to work off drug charges pending against Fadlevich by the Hoover Police Department. Defense counsel stated that, in calling Fadlevich, he specifically wanted to show: the business arrangement between the two; that they had been friends for several years; and that Justin, who had a "long string of criminal convictions," was attempting to take advantage of Gause, who had no criminal history, so that no additional charges would be brought against Justin. Defense counsel testified that "[w]e couldn't dispute that [petitioner] had this large quantity of marijuana, so we had to argue that he was `set up' by Justin at the behest of the Hoover Police Department." Defense counsel further testified that although it was brought out at the preliminary hearing that the confidential informant, via the telephone, had requested Gause to bring him three pounds of marijuana, the Hoover Police had lost the alleged taped recording of the telephone conversation. Therefore, he discounted the statement. It was also brought out at the preliminary hearing that this was the first deal between Gause and the confidential informant, which defense counsel believed to be favorable in Gause's defense. Defense counsel testified that Gause continually denied any involvement in drugs.
The record, which includes the trial transcript of the defense's case reveals that counsel called three witnesses: William Stroud, Justin Fadlevich, and Gause. When defense counsel questioned Fadlevich concerning what type of business relationship he had had with Gause, the witness replied that it was "marijuana." Defense counsel was able to elicit from the witness that he had purchased discounted tires for Gause on two occasions. Defense counsel then questioned the witness regarding his role as a confidential informant and his desire to work the drug deals for the Hoover Police Department to get himself out of trouble. The witness then testified that he had made three or four telephone calls to Gause on the day of the incident, and on the last call, Gause had told him that he "had my three pounds and if I had any baggies that he could weigh up the other pounds that he had at my house." When defense counsel asked the witness, "[I]sn't it a fact that you called him about those many times, only he told you that he was coming to your house but he was coming to pay you for the tires?" The witness replied, "Not hardly, man. No." Defense counsel then questioned the witness about two Hoover Police Officers "transplanting themselves" in his home and making it a "mini-station" while waiting for the officers to arrive. *Page 464 
On cross-examination, the State elicited information that Gause and he had had a long-term relationship where Gause had supplied him with two to three pounds of marijuana for approximately one year and eight months. He testified that he had paid Gause approximately $850 per pound, and that, on the night of Gause's arrest, he was to pay him $800 per pound because he was buying three pounds.
Gause then took the stand in his defense and testified to the same set of facts and circumstances that he had consistently told defense counsel; i.e., that he had telephoned Justin and told him that he was coming over to pay for his tires. He testified that Justin "sounded like he was real anxious to get me over there for some reason or another." Gause testified that he had run into a person by the name of "Josh" at the BP station, and that Josh had asked him to take to Justin a package that was "rolled-up" and that Gause could not see through. He took it and "the next thing [he] knew" he was under arrest.
After questioning Gause about the residue of marijuana found in his bedroom, and after Gause admitted that it was for his personal use, defense counsel elicited the following testimony:
 "[Defense counsel]: Did you know at the time of January the 7th, 2000 that you were hauling marijuana?
"[Gause]: I wasn't sure.
"[Defense counsel]: Did you know that?
"[Gause]: I had an idea that it was.
"[Defense counsel]: I'm not asking for your ideas.
"[Gause]: Yes, Sir.
"[Defense counsel]: Listen to me.
"[The Court]: Well, he told you, didn't he?
"[Defense counsel]: I'm asking you —
"[The Court]: Go on. Go on.
 "[Defense counsel]: I'm asking you — listen to my question, all right? Did you know or did you think that you were hauling five pounds of marijuana?
 "[Gause]: No. I did not think it was five pounds of marijuana, no, sir.
". . . .
 "[Defense counsel]: I'll ask you — this is probably my last question. I want to be clear about this because I think you didn't understand me the first time. Did you know that the package you received on January the 7th was five pounds or less of marijuana?
"[Gause]: I thought it was much less."
On cross-examination, the State, with the help of the trial court, elicited information from Gause that he knew that there was marijuana in the bag, but that he did not know how much. Additionally, the witness testified that it was the first time he had delivered marijuana to the informant.
At the Rule 32 hearing, defense counsel testified that the petitioner and he discussed trial strategy; they discussed who would be called as witnesses; and they discussed Gause's testifying in his own defense. Defense counsel testified that he asked Gause to "tell me everything, the good, the bad, the ugly. And he never told me [in regard to the trafficking charge] that he knew he was carrying marijuana." He testified that he asked Gause many times, "Did you know what was in that package?" and he replied, "No, I didn't. I just took it and put it in the trunk. And I got out, and I proceeded to walk into the house." Defense counsel testified that "[h]ad he been honest with me, that he did know it was marijuana, we might have done some different things. He destroyed the theory or strategy that we had set up when he admitted that he knew the bag contained marijuana." Defense counsel *Page 465 
testified "[t]hat was the first time I was hearing that."
When asked by the trial court if he had talked to the informant before calling him to the stand, defense counsel replied that he had called the witness several times over the telephone, but that the witness had not returned his calls. It was his thought that the State did not want him to talk to him. He testified that he knew from the preliminary hearing in the district court that the informant, whose name was unknown to him at the time, had used Gause for only one drug buy. Additionally, defense counsel testified that "in talking with [Gause], he never told him that he had been doing buys prior to this with Justin, never." He testified that he had relied on what Gause told him and that Gause had presented a "good-boy" image. Defense counsel stated that he subpoenaed the witness and was able to interview him briefly before putting him on the stand, but that he had not gone into detail like he did when he was on the stand. Defense counsel again reiterated that, based on what he had been told by Gause, he expected the witness to testify concerning the debt that Gause owed him as a reason to go to the witness's house.
Defense counsel testified that after Gause was arrested and charged with trafficking, a search warrant was executed for his home, where a small amount of marijuana (3.32 grams) was found, along with drug paraphernalia, in his bedroom. He testified that Gause had told him that the marijuana was for his personal use. He testified that it was his trial strategy to allow Gause to testify and admit that the marijuana was his. He believed that it would look good to the jury for Gause to take responsibility for his actions, especially in view of the fact that a conviction for personal use would involve only a misdemeanor conviction. At the hearing, defense counsel testified that he had considered arguing that the police had planted the marijuana, but discarded the argument, because there was no evidence to support such a defense.
The trial judge conducting the hearing on the Rule 32 petition found as follows:
 "[O]ne of the first things that I think I learned and most lawyers learn is that you do not call someone to the stand unless you know what they are going to say. And the way you know what they are going to say is by sitting down and talking to them, interviewing them. You do not call someone to the stand when you do not know what they are going to say, especially in a serious criminal case. I know counsel gave an explanation for calling the witness, the informant[,] to the stand without having first spoken with him. But I find that explanation to be very, very lacking and deficient . . .
". . . .
 "It's no doubt in my mind that he was prejudiced by calling this informant to the stand without having first talked to that informant. And, I mean, if you talk about — you know, it's one thing if maybe it had just been a character witness, you know. You needed a character witness, and you all had just been missing each other when you called the character witness or they call you, you were out in court and you got to trial and it was bust and, you know, you had to put him up there. But, you know, maybe your law clerk had personally spoke [n] with the character witness. You know, but you're talking about, putting the, basically putting the police on the stand against — and you know that's going to hurt your client. You don't do that. You just don't do that."
The trial court further held that, "[defense counsel] should have never called [Gause] to the stand after that CI [confidential *Page 466 
informant] testified in my opinion. He should have never call[ed][him] to the stand."
We cannot in good conscience agree with the court's decision that defense counsel was ineffective in advising Gause to pursue a trial strategy that was based on information Gause represented to defense counsel was the truth. See, e.g., Ex parte Wilson,571 So.2d 1251, 1256 (Ala. 1990). Clearly, Gause disregarded defense counsel's advice when he lied and misinformed him concerning the facts of the case. To hold defense counsel responsible for Gause's lies and misinformation would conflict with the doctrine of invited error. "`Under the doctrine of invited error, a defendant cannot by his own voluntary conduct invite error and then seek to profit thereby.'" Adkins v.State, ___ So.2d at ___, quoting Phillips v. State,527 So.2d 154, 156 (Ala. 1988). Moreover, it was those lies and misinformation by Gause that prompted defense counsel to make a conscious decision to forgo interviewing the confidential information. Applying a heavy measure of deference to counsel's judgment, we cannot say that his decision to not interview the confidential informant was unreasonable based on the totality of the circumstances in this case.
With regard to the possession charge, it was not unsound trial strategy to allow Gause to testify in his defense, admitting responsibility for his possession of marijuana for personal use, given the minute amount of marijuana and its location in his bedroom, coupled with the fact that he was alleging that he was "set up" on the trafficking charge.
Defense counsel in this case, as in every case, could have done something more, or something different. Our law, however, does not require defense counsel, in order to render effective assistance of counsel, to anticipate that his or her client is lying and to thereby disregard what appears to be a sound trial strategy based on critical information supplied by the client.
The judgment of the trial court is reversed and this cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
BASCHAB and WISE, JJ., concur. SHAW, J., concurs in the result. COBB, J., dissents, with opinion.